[No. B064835. Second Dist., Div. Six. Nov. 29, 1994.]

CITY OF SAN DIEGO, Plaintiff and Appellant, v.
UNITED STATES GYPSUM COMPANY et al., Defendants and
Respondents.

## COUNSEL

John Witt, City Attorney, Deborah Berger, Deputy City Attorney, Casey, Gerry, Casey, Westbrook, Reed & Schenk, T. Michael Reed and Thomas D. Penfield for Plaintiff and Appellant.

Thelen, Marrin, Johnson & Bridges, W. Glenn Cornell, Humphrey, Farington & McClain, Kenneth B. McClain, Freilich, Kaufman, Fox & Sohagi and Benjamin Kaufman as Amici Curiae on behalf of Plaintiff and Appellant.

Neil, Dymott, Perkins, Brown & Frank, Roger G. Perkins, James A. McFall, Morgan, Lewis & Bockius, James D. Pagliaro, Karen Pieslak Pohlmann, Breidenback, Swainston, Crispo & Way, Thomas C. Corless, Randi S. Lewis, Kendall Caudry, Walsworth, Franklin & Bevins, Michael T. McCall, Nicholas A. Cipiti, James A. Anton, Seltzer, Caplan, Wilkins & McMahon, Gerald L. McMahon and James B. Franklin for Defendants and Respondents.

Christopher M. Micheli as Amicus Curiae on behalf of Defendants and Respondents.

## OPINION

**GILBERT, J.**—A city sues various defendants for damages stemming from installation of asbestos in its buildings. The statute of limitations for injury to city's real property is three years. (Code Civ. Proc., § 338, subd. (b).) The statute of limitations begins to run when city suffers an appreciable and actual harm.

Here we hold, among other things, appreciable harm is not limited to the existence of an actual health hazard. As pleaded, the city's knowledge of deterioration to its buildings caused by asbestos constitutes the infliction of an appreciable harm that begins the statute of limitations running.

Plaintiff City of San Diego appeals a judgment in favor of defendants, are manufacturers and distributors of asbestos-containing building materials. The trial court's ruling was based upon the three-year statute of limitations of Code of Civil Procedure section 338, subdivision (b), and a failure to state a cause of action for nuisance and equitable indemnification. We affirm.

### FACTS

On May 25, 1988, plaintiff City of San Diego (City) brought an action against 31 defendants who manufactured, distributed or otherwise were involved with asbestos-containing building materials. City alleged it owned or leased more than 1,000 public buildings that contained these materials. In its second amended complaint, City alleged asbestos particles, fibers and dust have contaminated city-owned and city-leased buildings due to "normal wear, aging, abrasions, and impacts, as well as routine maintenance and repair." City seeks recovery for, among other things, money it spent and will spend to identify and abate the asbestos danger, and for loss of use and decline in value of its property.

City alleged the asbestos-containing building materials included insulation, gaskets, backings, tape, floor and ceiling tile, acoustical materials, plaster, textiles, boilers, ventilating materials and fireproofing. (See *Mullen v. Armstrong World Industries, Inc.* (1988) 200 Cal.App.3d 250, 256-257, fn. 7 [246 Cal.Rptr. 32], describing the primary, secondary and consumer uses of asbestos and the physical properties of the six asbestos minerals used in building products.)

The five defendants involved with this appeal are: W. R. Grace & Co.— Connecticut, a manufacturer of fireproofing insulation and acoustical plaster; United States Gypsum Company, a manufacturer of acoustical plaster; Thorpe Insulation Company, a distributor of thermal system insulation; Hamilton Materials, Inc., a manufacturer and supplier of decorative ceiling compounds; and Proko Industries, Inc., also a manufacturer and supplier of decorative ceiling compounds. In the 1960's and 1970's, City purchased and installed asbestos-containing building materials manufactured or distributed by these defendants.

Initially, City alleged causes of action for negligence, strict liability, breach of express and implied warranties, restitution, nuisance, fraud, punitive damages, successor liability and conspiracy. Defendants challenged these causes of action, upon grounds of the statute of limitations and failure to state a cause of action, by demurrer, judgment upon the pleadings and summary judgment. The trial court granted these motions.

This appeal concerns the negligence, strict liability, nuisance and equitable indemnification causes of action alleged in City's second and third amended complaints.

The parties to this litigation agree that the three-year statute of limitations for "[a]n action for . . . injury to real property" applies here. (Code Civ. Proc., § 338, subd. (b).) May 25, 1985, is the day three years before City filed this lawsuit against these asbestos manufacturers and distributors. Evidence offered in support of defendants' summary judgment motions contending City's lawsuit is precluded by the three-year limitations period of section 338, subdivision (b), established this:

Before May 25, 1985, City conducted an extensive investigation and evaluation of asbestos-containing materials in many city buildings. City's safety director, Rick Cumming III, directed this investigation. Dr. Kenneth S. Cohen, a certified industrial hygienist, toxicologist and safety engineering consultant, assisted Cumming in an evaluation of city buildings, including bulk sampling and air testing. Between 1978 and 1985, two professional testing labs conducted 500 air quality tests and analyses in city buildings.

Also before May 25, 1985, Dr. Cohen trained approximately 200 city maintenance personnel concerning the health dangers of disturbing in-place asbestos and held asbestos training sessions for other city custodial employees. In 1983, City prepared an eight-minute videotape entitled "Understanding Asbestos," that was shown to many city employees who worked in city buildings constructed with asbestos-containing building materials. City also printed 500 posters stating, "CAUTION. ASBESTOS DUST HAZARD. Certain Construction Materials within this building have been identified as containing asbestos fibers. AVOID CREATING DUST. BREATHING ASBESTOS FIBERS MAY CAUSE SERIOUS BODILY HARM." These signs were posted in city buildings.

City also formed an "Asbestos Containment Team," known as "The Tiger Team." Team members received special training in dealing with asbestos, wore protective clothing, including respirators, received health screening, including chest X-rays and pulmonary function tests, and were paid a premium hourly rate in their duties.

Before May 25, 1985, there were instances of degrading or deterioration of asbestos-containing building materials in city buildings. In 1983, for example, the San Diego Police Headquarters building contained an asbestos boiler blanket that was "in very poor condition and . . . ripped." In 1984, asbestos insulation covering piping in the men's restroom at Brown Field became damaged. Full-day air sampling at that time disclosed, however, that airborne asbestos fibers fell below current health standards.

In 1982, a ceiling at the Mission Beach Plunge collapsed when a transient living in the ceiling crawl space stepped through the ceiling. The ceiling collapse apparently produced " 'high' " asbestos fiber counts similar to "a controlled rip-out of insulation in the hold of a Naval Vessel," according to Dr. Cohen. In 1984, a city employee wrote city officials and informed them the lube area of the city service station in which he worked had "[asbestos] coming off of overhead pipes and fall[ing] all over the place."

In 1980, safety director Cumming wrote the deputy city manager concerning asbestos exposure to 400 to 500 city employees. He stated: "These exposures are encountered when asbestos-cement water pipe is cut; when making brake and clutch repairs; when cutting dry wall impregnated with asbestos; and when doing maintenance/repair work in crawl spaces, on ceiling tiles or on pipe insulation impregnated with asbestos." In 1983, Cumming noted "there is *no safe level* of exposure [to asbestos]."

On January 31, 1985, City filed a claim for $50 million damages in the United States Bankruptcy Court proceeding concerning the bankruptcy of

Johns-Manville Corporation and its related entities. City claimed the $50 million damages were "[b]elieved to be the cost of repair of the city buildings and damages sustained by employees, past, present and future," due to the presence of asbestos-containing building materials in city-owned and city-leased buildings. City alleged it was "presently" performing encapsulation, enclosure and removal of friable[1] asbestos-containing material and was "presently . . . investigat[ing]" future encapsulation, enclosure and removal of such material.

Prior to May 25, 1985, many newspapers and technical journals published articles documenting the human health hazards presented when asbestos-containing building materials degraded, releasing asbestos fibers and dust into the air. On April 5, 1984, the United States Environmental Protection Agency promulgated its "National Emission Standards for Hazardous Air Pollutants: Amendment to Asbestos Standards," concerning equipment and workplace requirements regarding asbestos-containing building materials. (40 C.F.R. § 61.01 et seq. (1993).)

In its opposition to defendants' motion for summary judgment, City acknowledged and admitted that it knew before May 25, 1985, that city-owned and city-leased buildings contained asbestos-containing building materials that posed a human health hazard. City offered to stipulate "it *knew* asbestos was a dangerous and defective product well before 1984 [and] it knew asbestos was in many of its buildings well before 1984."

On appeal, City contends: 1) the three-year statute of limitations does not commence to run until a particular building is contaminated by a significant release of asbestos fibers or dust; 2) defendants are liable to City for their creation of a nuisance on City property; 3) City has a cause of action for equitable indemnification against defendants, although it is not presently liable to an injured third party; 4) the rule barring recovery for economic losses does not preclude City's claims; and 5) public policy allows public entities to obtain recompense under the circumstances here.

The amicus curiae briefs of 66 California cities and counties, the California State Association of Counties, the California Manufacturers Association, and the amicus curiae brief of Trizec Properties, Inc., Marina Airport Buildings, Ltd., California Sansome Co., and Polk Market Co. have been helpful in the resolution of this appeal.

---

[1]"Friable" means "easily crumbled, pulverized, or reduced to powder." (Webster's New Internat. Dict. (3d ed. 1981) p. 910.)

DISCUSSION

I.

■ City argues its action against defendants is not barred by the three-year limitations period of Code of Civil Procedure section 338, because City first suffered damage within three years of filing this action. City contends "damage" occurs when a building becomes contaminated by sufficient asbestos fibers to pose a human health hazard. Until then, City argues it has no cause of action upon which the statute of limitations can run. (*CAMSI IV* v. *Hunter Technology Corp.* (1991) 230 Cal.App.3d 1525, 1534 [282 Cal.Rptr. 80], "actual and appreciable harm" is a necessary element of a tort cause of action.) Stated otherwise, City asserts the "mere presence" of asbestos-containing building materials in city buildings, with a potential for fiber and dust release, does not give rise to a tort cause of action against defendants. (*Kansas City* v. *W.R. Grace & Co.* (Mo.Ct.App. 1989) 778 S.W.2d 264, 268, tort cause of action accrues when sufficient asbestos fibers contaminate a building and cause a substantial and unreasonable risk of harm.) City contends each asbestos-containing building material in each city-owned and city-leased building gives rise to a separate cause of action.

A summary judgment raises only questions of law, which we review independently on appeal. (*Biljac Associates* v. *First Interstate Bank* (1990) 218 Cal.App.3d 1410, 1420 [267 Cal.Rptr. 819].) Our review concerns an identification of issues presented by the pleadings, a determination whether defendants have established facts to negate City's claims, and a determination whether City has established that triable factual issues exist. (*Ibid.*, discussing analytical procedures to be used in review of summary judgment.) ■ Resolution of a statute of limitations defense normally is a factual question for the trier of fact. (*Jolly* v. *Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1112 [245 Cal.Rptr. 658, 751 P.2d 923].) Summary judgment is proper, however, if the court can draw only one legitimate inference from uncontradicted evidence regarding the limitations question. (*Ibid.*; *Miller* v. *Lakeside Village Condominium Assn.* (1991) 1 Cal.App.4th 1611, 1620 [2 Cal.Rptr.2d 796].)

■ In tort actions, the statute of limitations commences upon the occurrence of the last element essential to a cause of action. (*Leaf* v. *City of San Mateo* (1980) 104 Cal.App.3d 398, 406 [163 Cal.Rptr. 711].) If the last element to occur is the element of damage, the statute of limitations begins to run upon the occurrence of "appreciable and actual harm, however uncertain in amount," that consists of more than nominal damages. (*Davies* v. *Krasna* (1975) 14 Cal.3d 502, 514 [121 Cal.Rptr. 705, 535 P.2d 1161, 79

A.L.R.3d 807].) "[O]nce plaintiff has suffered actual and appreciable harm, neither the speculative nor uncertain character of damages nor the difficulty of proof will toll the period of limitation." (*Ibid.*; *Oakes* v. *McCarthy Co.* (1968) 267 Cal.App.2d 231, 255 [73 Cal.Rptr. 127], statute of limitations commences with damages appreciable to a reasonable person.)

■ In its second amended complaint, City alleged that it determined "[w]ithin the statutory time period," that asbestos fibers and dust were contaminating city buildings due to "normal wear, aging, abrasions and impacts, as well as routine maintenance." City also alleged "new and further deterioration" occurred with time. Within the statute of limitations, City pleaded it discovered friable asbestos presented "a substantial risk of severe injury . . . caused by inhalation of asbestos fibers. . . ." This knowledge required City to inspect its property and remove or encapsulate asbestos-containing building materials.

For several reasons, we reject City's argument. First, in its second amended complaint, City claimed asbestos-related damages for testing, inspecting, safeguarding, and abating asbestos-containing building materials. City did not narrowly limit its claimed damages to those buildings contaminated by "significant" asbestos dust and fiber release. Now City appears to be arguing for a narrower claim of damages than pleaded. Defendants are entitled to rely upon and City is bound by the allegations in its pleadings. (*Uram* v. *Abex Corp.* (1990) 217 Cal.App.3d 1425, 1433 [266 Cal.Rptr. 695], discussing general rule; *Thompson* v. *Williams* (1989) 211 Cal.App.3d 566, 573 [259 Cal.Rptr. 518].) Evidence offered in support of defendants' summary judgment motion established City suffered some, albeit not all, of the pleaded damages more than three years before bringing this action. The three-year statute of limitations commenced when these "appreciable and actual" damages occurred. (*Davies* v. *Krasna, supra,* 14 Cal.3d 502, 514.)

Second, City's allegations, set forth in its second amended complaint, establish that asbestos dust and fiber release occurred continuously from time of sale and installation of the asbestos-containing building material. Thus, City alleged "as a result of normal wear, aging, abrasions and impacts, as well as routine maintenance and repair," asbestos dust and fibers have contaminated City buildings. City also alleged the city buildings "would be continually contaminated" and "new and further deterioration" would occur so long as asbestos-containing buildings materials were present. These judicial admissions therefore establish City has suffered more than "nominal" damages since sale and installation of asbestos-containing building materials, well outside the three-year limitations period. (*Davies* v. *Krasna, supra,* 14 Cal.3d 502, 514.)

Moreover, the trial court properly rejected City's argument concerning its causes of action on a building-by-building and product-by-product basis because City's admissions of continuing injury since installation and sale, *ante*, establish "appreciable and actual harm" beyond the three-year limitations period. (*Davies* v. *Krasna, supra,* 14 Cal.3d 502, 514.)

Third, on January 31, 1985, three years and four months before filing this action, City filed a claim in federal bankruptcy court, regarding the bankruptcy of Johns-Manville Corporation and related entities. This bankruptcy claim demanded $50 million damages for abatement work "presently being performed" and that "being investigated."

This claim establishes City suffered more than "nominal" damages beyond the three-year statute of limitations period. Moreover, it matters not that the claim was directed to Johns-Manville Corporation and not these defendants since the statute of limitations is not delayed because plaintiff does not know the wrongdoer's identity. (*Jolly* v. *Eli Lilly & Co., supra,* 44 Cal.3d 1103, 1112, fn. 8.)

Defendants Hamilton Materials, Inc., and Proko Industries, Inc. contend City's action is precluded by Code of Civil Procedure section 337.15, a statute limiting actions for design or construction defects in improvements to real property to ten years after substantial completion of the development or improvement. The trial judge concluded otherwise as a matter of law. Although we note there is legal support for the trial judge's ruling, we need not discuss this issue in view of our discussion of section 338, subdivision (b). (*Sevilla* v, *Stearns-Roger, Inc.* (1980) 101 Cal.App.3d 608, 611 [161 Cal.Rptr. 700], section 337.15 does not apply to manufacturers of allegedly defective products; *Barnhouse* v. *City of Pinole* (1982) 133 Cal.App.3d 171, 183-184 [183 Cal.Rptr. 881].)

## II.

City alleged in its third amended complaint and contends here that deterioration of asbestos-containing building materials in city buildings has created a continuing nuisance. City argues the broad statutory definition of nuisance set forth in Civil Code section 3479, "[a]nything which is injurious to health, . . . or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property . . . ," encompasses the degradation and release of asbestos fibers and dust from asbestos-containing building materials. City claims the manufacturer of an allegedly defective product can be liable in nuisance, generally a land-connected tort, because "[t]he stream of commerce can carry pollutants every bit as effectively as a

stream of water." City disputes that defendants' ability to abate or control a nuisance, a theory defendants successfully urged in the trial court, is a necessary predicate to a nuisance cause of action, particularly where City seeks money damages, not abatement. (*Shurpin* v. *Elmhirst* (1983) 148 Cal.App.3d 94, 101 [195 Cal.Rptr. 737], nonproperty owners who assist in the creation of a nuisance are liable.)

Amicus curiae Association of California Counties urges that City has pleaded a cause of action for continuing nuisance. City's damages, amicus curiae asserts, are continuing and occur with each significant release of asbestos fibers, dust or particles. (See *Capogeannis* v. *Superior Court* (1993) 12 Cal.App.4th 668, 675-679 [15 Cal.Rptr.2d 796], discussing the law of continuing nuisance.) Amicus curiae also points out California law does not require that a nuisance originate on neighboring property. (*Mangini* v. *Aerojet-General Corp.* (1991) 230 Cal.App.3d 1125, 1134 [281 Cal.Rptr. 827]; *Arcade Water Dist.* v. *U.S.* (9th Cir. 1991) 940 F.2d 1265, military laundry operations contaminated plaintiff's water well, 2,000 feet away from laundry.)

The trial court here granted judgment on the pleadings concerning City's nuisance cause of action because the trial court believed California law requires a defendant to own or control the means causing the nuisance. We need not discuss whether this is so because City has essentially pleaded a products liability action, not a nuisance action. The ruling of the trial court was correct but for a different legal reason. (*United Pacific Ins. Co.* v. *Hanover Ins. Co.* (1990) 217 Cal.App.3d 925, 933 [266 Cal.Rptr. 231].)

Nuisance has been described as an "impenetrable jungle." (Prosser & Keeton, Law of Torts (5th ed. 1984) § 86, p. 616.) "[Nuisance] has meant all things to all people, and has been applied indiscriminately to everything from an alarming advertisement to a cockroach baked in a pie. There is general agreement that it is incapable of any exact or comprehensive definition." (*Ibid.*, fns. omitted.)

In California, a broad statutory definition of nuisance appears to embrace nearly any type of interference with the enjoyment of property. (*Stoiber* v. *Honeychuck* (1980) 101 Cal.App.3d 903, 919 [162 Cal.Rptr. 194].) Civil Code section 3479 defines a nuisance as "[a]nything which is injurious to health, or indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property . . . ."

California law has permitted recovery in nuisance where a defendant has owned or controlled property from which the nuisance arose (*Donahue* v.

*Stockton Gas etc. Co.* (1907) 6 Cal.App. 276, 280 [92 P. 196]), where a defendant has created a nuisance on another's property (*Selma Pressure Treating Co.* v. *Osmose Wood Preserving Co.* (1990) 221 Cal.App.3d 1601, 1620 [271 Cal.Rptr. 596]) or where a defendant has employed another to perform work that has resulted in a nuisance to plaintiff's property (*Portman* v. *Clementina Co.* (1957) 147 Cal.App.2d 651, 659-660 [305 P.2d 963].)

City cites no California decision, however, that allows recovery for a defective product under a nuisance cause of action. Indeed, under City's theory, nuisance "would become a monster that would devour in one gulp the entire law of tort . . . ." (*Tioga Public School Dist.* v. *U.S. Gypsum* (8th Cir. 1993) 984 F.2d 915, 921.)

Other jurisdictions considering this issue have not permitted plaintiffs to recover damages for defective asbestos-containing building materials under a nuisance action. (*Tioga Public School Dist.* v. *U.S. Gypsum, supra,* 984 F.2d 915, 920-921; *Detroit Board of Education* v. *Celotex Corporation* (1992) 196 Mich.App 694 [493 N.W.2d 513, 520-522]; *Town of Hooksett School Dist.* v. *W. R. Grace Co.* (D.N.H. 1984) 617 F. Supp. 126, 133; *Johnson County, Tenn.* v. *U.S. Gypsum* (E.D.Tenn. 1984) 580 F.Supp. 284, 294.) *Town of Hooksett School Dist.* v. *W. R. Grace Co., supra,* 617 F.Supp. 126, 133, noted plaintiff's complaint concerned defendant's acts as a manufacturer and not a property owner. *Johnson County, Tenn.* v. *U.S. Gypsum, supra,* 580 F.Supp. 284, 294, stated that allowing a nuisance action under these circumstances "would convert almost every product liability action into a nuisance claim."

*Detroit Board of Education* v. *Celotex Corporation, supra,* 493 N.W.2d 513, 521, observed that all courts that have considered this question have rejected a nuisance claim as a theory of recovery for asbestos contamination. The court further noted that nuisance cases "universally" concern the use or condition of property, not products. (*Ibid.*) Prosser agrees: "If 'nuisance' is to have any meaning at all, it is necessary to dismiss a considerable number of cases which have applied the term to matters not connected either with land or with any public right, as mere aberration . . . ." (Prosser & Keeton, *op. cit., supra,* p. 618, fns. omitted.)

*Mangini* v. *Aerojet-General Corp., supra,* 230 Cal.App.3d 1125 and *Selma Pressure Testing Co.* v. *Osmose Wood Preserving Co., supra,* 221 Cal.App.3d 1601, do not concern recovery for defective products under a nuisance theory. *Mangini* concerned a nuisance action against prior tenants of plaintiffs' property who had contaminated the property with hazardous waste during the period of the leasehold. *Mangini* held the prior tenants could be

liable for creating the nuisance although they had no present possessory interest in the property and thus, no ability to abate the nuisance. (*Mangini, supra,* 230 Cal.App.3d 1125, 1137, fn. 7.)

*Selma Pressure Treating Co.* v. *Osmose Wood Preserving Co., supra,* 221 Cal.App.3d 1601, 1620, concerned a public action against the owners of a wood treatment facility for improper disposal of hazardous waste on the property. The court permitted an action against the installer of the equipment for directly creating or assisting in the creation of a nuisance, including an unlined dirt pond containing hazardous waste. Neither *Mangini* nor *Selma* concerned a products liability action in the guise of a nuisance action.

## III.

City contends it is entitled to equitable indemnification from defendants because in abating the asbestos in city buildings, it has ameliorated a human health hazard. City acknowledges it has not been sued by any plaintiff for money damages or other relief arising from the presence of asbestos fibers, asbestos dust or in-place asbestos-containing building materials in city buildings. City believes *Selma Pressure Treating Co.* v. *Osmose Wood Preserving, Co., supra,* 221 Cal.App.3d 1601 and *Mangini* v. *Aerojet-General Corp., supra,* 230 Cal.App.3d 1125, 1132, support City's recovery in equitable indemnification against defendants, although City is not presently in asbestos-related litigation with any plaintiff. City rests its argument upon the theory that defendants have caused or contributed greatly to the asbestos-related nuisance in city buildings.

For several reasons, the trial court properly granted summary judgment regarding City's cause of action for equitable indemnification. First, City has not incurred damages for payment to any third party in settlement of a claim or in satisfaction of a judgment. Second, since no statute or regulation imposes joint liability on City and defendants for costs of managing or removing asbestos-containing building materials, City and defendants are not jointly and severally liable to a third party. Third, the three-year limitations period of Code of Civil Procedure section 338, subdivision (b), precludes City's cause of action for equitable indemnification.

Our Supreme Court has consistently ruled that a cause of action for indemnity does not accrue until the indemnitee suffers loss through payment of an adverse judgment or settlement. (*Valley Circle Estates* v. *VTN Consolidated, Inc.* (1983) 33 Cal.3d 604, 611 [189 Cal.Rptr. 871, 659 P.2d 1160]; *People* ex rel. *Dept. of Transportation* v. *Superior Court* (1980) 26 Cal.3d 744, 748 [163 Cal.Rptr. 585, 608 P.2d 673].) " 'The indemnity action . . .

accrues at the time the tort defendant pays a judgment or settlement as to which he is entitled to indemnity.' . . . [Citations.]" (*Valley Circle Estates v. VTN Consolidated, Inc., supra*, 33 Cal.3d 604, 611.) There can be no indemnity without liability. (*Munoz v. Davis* (1983) 141 Cal.App.3d 420, 425 [190 Cal.Rptr. 400].)

Here City has not pleaded any loss suffered through settlement or satisfaction of judgment. City also has admitted in a pretrial statement of damages that no damages "to date" arise from payment of third party claims or judgments. Thus, City has not pleaded a valid claim for equitable indemnification.

Moreover, no statute or regulation imposes joint liability on City and defendants for costs of managing or removing asbestos-containing material. Unless the prospective indemnitor and indemnitee are jointly and severally liable to the plaintiff, there is no basis for indemnification. (*Selma Pressure Treating Co. v. Osmose Wood Preserving Co., supra*, 221 Cal.App.3d 1601, 1611-1613; *Munoz v. Davis, supra*, 141 Cal.App.3d 420, 425.) The national emission standards for hazardous air pollutants issued by the Environmental Protection Agency (40 C.F.R. § 61 (1993))[2] do not compel City and defendants to remove asbestos-containing building materials from city-owned or city-leased buildings. Instead, the regulations require that a property owner "[d]ischarge no visible emissions to the outside air during the collection, processing (including incineration), packaging, transporting, or deposition of any asbestos-containing waste material generated by the source . . . ." (49 Fed.Reg. 13658 (Apr. 5, 1984).) Thus, the regulations are concerned with the demolition or renovation of buildings containing asbestos-containing building materials. (*Kansas City v. W.R. Grace & Co., supra*, 778 S.W.2d 264, 269.)

Nor do the regulations of the California Occupational Safety and Health Agency impose tort liability on City and defendants concerning asbestos removal or management. Title 8 of the California Code of Regulations, section 5208 contains general industrial safety orders concerning occupational exposure to asbestos. Section 5208 concerns monitoring employee exposure to airborne asbestos and engineering controls and work practices to prevent employee exposure. City does not identify any other statute or regulation that imposes tort liability upon it and defendants for management or removal of asbestos. Thus, City has not established it and defendants are jointly and severally liable to another for managing or removing asbestos-containing material.

---

[2]We take judicial notice of these regulations, as did the trial court. (Evid. Code, §§ 452 and 459.)

*Mangini* v. *Aerojet-General Corp.*, *supra*, 230 Cal.App.3d 1125 and *Selma Pressure Treating Co.* v. *Osmose Wood Preserving Co.*, *supra*, 221 Cal.App.3d 1601 are not helpful to City. In *Mangini*, plaintiffs sought equitable indemnity from a previous lessee of the property who contaminated the property with rocket fuels and hazardous substances. The Sacramento County Air Pollution Control District compelled plaintiff to undertake testing of the property. Plaintiff also alleged that state and federal laws "may . . . require[]" abatement of the hazardous waste. (*Mangini, supra*, 230 Cal.App.3d 1125, 1132.) *Mangini* cited the general rule that a cause of action for equitable indemnification does not exist until the indemnitee has suffered loss through payment. (*Id.*, p. 1154.) *Mangini* then held that plaintiffs' cause of action for equitable indemnification was not time barred "because the complaint does not disclose when plaintiffs incurred costs for testing or cleanup of the hazardous waste." (*Id.*, p. 1155.) *Mangini* is factually distinguishable because there, air pollution control authorities had already required plaintiffs to test the real property for hazardous waste. Here City was under no such requirement and admits it has suffered no financial losses to third parties.

In *Selma Pressure Treating Co.* v. *Osmose Wood Preserving Co.*, *supra*, 221 Cal.App.3d 1601, the state and a regional water quality control board sued the owners and operators of a wood treatment facility for improper disposal of hazardous wastes. *Selma* restated the well-settled rule that the prospective indemnitee and prospective indemnitor must be jointly liable to plaintiff. (*Selma, supra*, 221 Cal.App.3d 1601, 1612.) *Selma* then held that the property owner and the designer/builder of a pressure wood treating plant could be jointly and severally liable to the government plaintiffs for damages. (*Id.*, at p. 1624.)

As a third reason City's equitable indemnification cause of action fails, the three-year limitations period of Code of Civil Procedure section 338, subdivision (b), precludes such action. As discussed, *ante*, part I, City's cause of action commenced when it suffered "appreciable harm," such harm having occurred before May 25, 1985. (*Davies* v. *Krasna*, *supra*, 14 Cal.3d 502, 514.)

City's third amended complaint also alleges a cause of action for declaratory relief based upon its right to equitable indemnification. To support its claim for declaratory relief, City must have an enforceable right to equitable indemnity. (*Gillies* v. *La Mesa etc. Irr. Dist.* (1942) 54 Cal.App.2d 756, 762 [129 P.2d 941].) Since, as discussed, City's claim for equitable indemnification fails, so too must its claim for declaratory relief.

## IV.

City contends public policy requires that it be permitted to proceed with this action against defendants. City points out that Civil Code section 3523 provides that "[f]or every wrong there is a remedy."

Nevertheless, the statute of limitations is a defense potentially available to every defendant in this state. City's remedy is with the Legislature to amend the statute of limitations to allow recovery in asbestos actions or to bar the defense in actions brought by public entities. As City recognizes, other states have employed these methods to permit actions such as this to proceed.

In view of our resolution here, we need not discuss other issues raised by the parties. Thus, we do not discuss City's contention that its alleged damages are contamination and resulting injury to city buildings, rather than damages for a defective product or one that does not perform as expected. In California, these latter damages, of course, are not recoverable in a products liability or negligence action. (*Sacramento Regional Transit Dist.* v. *Grumman Flxible* (1984) 158 Cal.App.3d 289, 293, 298 [204 Cal.Rptr. 736].) Nevertheless, the "vast majority" of decisions in other states have decided in favor of permitting damages for asbestos contamination in strict liability. (*City of Greenville* v. *W. R. Grace & Co.* (D.S.C. 1986) 640 F.Supp. 559, 564.) Because the statute of limitations has run here, we need not resolve this apparent conflict.

We also do not discuss whether City adequately cited or referred to material facts it disputed. (Code Civ. Proc., § 437c, subd. (b).)

Accordingly, the judgment is affirmed. City shall bear costs on appeal.

Stone (S. J.), P. J., and Yegan, J., concurred.

A petition for a rehearing was denied December 28, 1994, and appellant's petition for review by the Supreme Court was denied February 23, 1995. Mosk, J., was of the opinion that the petition should be granted.