**Bernard Hess CROWLEY and Gail Coleman Watts, Plaintiffs,**

v.

**Howard PETERSON, Jeff Erwin, Southwest Airlines Co., and Does 1 through 50, inclusive, Defendants.**

**No. CV 01–6981 RSWL (RCx).**

United States District Court, C.D. California.

May 30, 2002.

Binder & Associates, Pasadena, CA, for Plaintiffs Bernard Hess Crowley and Gail Crowley Watts.

Gray Cary Ware & Freidenrich LLP, San Diego, CA, for Defendant Southwest Airlines Co.

Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone, Marina Del Rey, CA, for Defendants Howard Peterson and Jeff Erwin.

## ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTIONS FOR SANCTIONS

LEW, District Judge.

This case arises out of an airplane accident at the Burbank Airport on March 5, 2000, which has led to several lawsuits. On or about September 15, 2000, Defendants Southwest Airlines Co., Howard B. Peterson III, and Jeffrey D. Erwin (collectively "Defendants") removed all of the pending cases arising from the accident to federal court. Because the cases are all

factually related, they have been transferred to this Court.

Plaintiffs Bernard Hess Crowley and Gail Coleman Watts filed suit against Howard Peterson and Jeff Erwin, respectively the Captain and First Officer of Flight 1455, on August 10, 2001. Plaintiffs alleged a sole cause of action for negligence. On September 27, 2001, Plaintiffs amended their Complaint, adding Southwest Airlines as a defendant. Plaintiffs still seek only a claim for negligence as against all Defendants.

In the instant Motions, Defendants Howard Peterson and Jeff Erwin and Defendant Southwest Airlines move this Court for summary judgment on the ground that Plaintiffs' claims are barred by California's one-year statute of limitations. Defendants also move this Court for sanctions under Federal Rule of Civil Procedure 11, arguing that Plaintiffs' counsel was or should have been aware that the statute of limitations had already run on Plaintiffs' claims. Plaintiffs argue in opposition that the limitations period could not begin to run until they suffered actual and appreciable harm and became aware of their injuries. They claim that their injuries were latent for many months after the crash, and that their action is therefore timely. They also oppose the Motions for sanctions.

For the reasons stated below, this Court **GRANTS** Defendants' Motions for summary judgment and **DENIES** Defendants' Motions for sanctions.

## BACKGROUND

On March 5, 2000, Southwest Flight 1455 from Las Vegas to Burbank landed at an unusually high speed and overran the runway, crashing through the perimeter fence and colliding with a car on a city street. Plaintiffs Crowley and Watts were passengers on the flight. Neither suffered any physical harm from the accident, but both now claim that they suffered long-term emotional injuries and that these injuries first manifested themselves many months after the accident.

Plaintiffs point to their testimony and the declaration of their psychiatric expert, David Wellisch, Ph.D., to establish that their injuries were latent rather than immediate. In their depositions and declarations, both Crowley and Hess testify that they feared for their lives during the landing and subsequent evacuation, but that these feelings lasted only a few minutes because the landing and evacuation happened very quickly. Moreover, they state that these feelings subsided once they had evacuated the plane safely. Thus, neither reported any injuries at the time of the accident or in the following months. Indeed, according to their testimony, they slept normally that night, resumed their normal activities the next day, and continued these activities for several months without any symptoms of long-term emotional injury. During this period, both even took several airplane flights without experiencing any unusual feelings or fears.

Despite the apparent lack of injuries in the months following the accident, both Hess and Crowley now claim that they are suffering from long-term emotional injuries. Both report increased levels of anxiety, especially when preparing to fly or taking a flight. Watts also reports difficulty focusing and sleeping, and less energy overall. Crowley reports increased flareups from a pre-existing ulcer, as well as loss of sexual desire. According to Plaintiffs, they did not begin to experience these injuries until many months after the accident. Plaintiffs have submitted a declaration from their psychiatric expert, David Wellisch, Ph.D., who concludes that each presents "meaningful and significant evidence" of anxiety disorder and post-

traumatic stress disorder and that their symptoms "strongly reflect a 'delayed onset' diagnosis." (Wellisch Decl. ¶ 8.)

## DISCUSSION

### I. Legal Standard: Summary Judgment

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A genuine issue is one in which the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The evidence, and any inferences based on underlying facts, must be viewed in a light most favorable to the opposing party. *See Diaz v. Am. Tel. & Tel.*, 752 F.2d 1356, 1358 n. 1 (9th Cir. 1985).

In ruling on a motion for summary judgment, the court's function is not to weigh the evidence, but only to determine if a genuine issue of material fact exists. *Anderson*, 477 U.S. at 242, 106 S.Ct. 2505.

### II. Choice of Law

At the hearing on Defendants' motion to dismiss on November 5, 2001, this Court determined that California's one year statute of limitations governed this case and rejected Plaintiffs' argument that either Texas's, Nevada's or Utah's longer statute of limitations should apply. In their Opposition, Plaintiffs nonetheless renew their choice of law arguments, adding several new allegations of negligent acts by Defendants that occurred in Texas. However, Plaintiffs have not amended their Complaint to include the new allegations, so the Court need not consider them in determining which statute of limitations to apply. Finally, these allegations do not affect the Court's choice of law analysis since they do not establish that Texas's interest in this litigation is greater than California's.[1]

### III. Tolling Under California Code of Civil Procedure Section 351

In ruling on Defendants' motion to dismiss, this Court also rejected Plaintiffs' argument that the statute of limitations was tolled by California Code of Civil Procedure section 351 because Defendants were absent from the State of California for an indefinite period of time. Plaintiffs have repeated this argument in their moving papers, but have not made any new allegations that are relevant to this issue. Thus, the prior ruling remains the law of the case.

### IV. Statute of Limitations

#### A. Legal Standard

 California Code of Civil Procedure section 340(3) provides a one-year statute of limitations for an action for personal injury caused by the wrongful act or neglect of another. Cal.Civ.Proc.Code § 340(3) (West 2001). The statute of limitations ordinarily begins to run "upon the

1. Plaintiffs allege only three acts that occurred in Texas: 1) Southwest negligently removed the airplane's autobrake system, 2) Southwest formulated a corporate policy that pressured pilots to arrive on-time, and 3) Southwest provided inadequate pilot training on how to conduct a safe landing. However, the negligence that allegedly occurred in California is far greater. In California, the pilots attempted to land an airplane at an unsafe speed and without making a proper approach. California's interest in preventing the greater negligence that allegedly occurred within its borders outweighs Texas's interest in preventing the lesser negligence that allegedly occurred inside its borders. Thus, even with these allegations of wrongful acts in Texas, California still has a greater interest in the litigation and its statute of limitations should apply.

occurrence of the last fact essential to the cause of action." *Saliter v. Pierce Bros. Mortuaries*, 81 Cal.App.3d 292, 146 Cal. Rptr. 271, 274 (1978). If the last essential fact is the fact of injury, then the limitations period starts to run when the plaintiff suffers actual and appreciable harm, however uncertain in amount. *Davies v. Krasna*, 14 Cal.3d 502, 514, 121 Cal.Rptr. 705, 535 P.2d 1161 (1975). It is uncertainty as to the fact of damage, rather than to its amount, which negates the existence of a cause of action. *Walker v. Pac. Indem. Co.*, 183 Cal.App.2d 513, 6 Cal.Rptr. 924, 926 (1960). Neither uncertainty as to the amount of damages, nor difficulty in proving damages, tolls the period of limitations. *Davies*, 14 Cal.3d at 513–14, 121 Cal.Rptr. 705, 535 P.2d 1161.

The California courts have not expressly defined the phrase "actual and appreciable harm." Therefore, it is not entirely clear how significant an injury must be in order to start the running of the period of limitations. However, the California Supreme Court has stated that a mere right to recover only nominal damages will not trigger the running of the limitations period. *See id.* Likewise, a mere breach of duty causing only speculative harm or a threat of future harm does not constitute "actual and appreciable harm." *See id.*

However, these statements, while helpful, do not answer the question in this case because they only clarify what does *not* constitute "actual and appreciable harm," not what *does* constitute such harm. To answer this question, this Court will examine applicable California precedent to determine how the "actual and appreciable harm" test applies to a situation in which the plaintiff suffers only minor emotional injuries at the time of the accident, but later experiences more significant emotional injuries.

## B. The Meaning of "Actual and Appreciable Harm"

### 1. the traditional rule

The traditional rule in California was that the limitations period begins to run as soon as the plaintiff suffers any compensable injury, however slight. One court stated that

> where an injury, although slight, is sustained in consequence of the wrongful act of another, and the law affords a remedy therefor, the statute of limitations attaches at once. It is not material that all the damages resulting from the act shall have been sustained at that time, and the running of the statute is not postponed by the fact that the actual or substantial damages do not occur until a later date.

*Sonbergh v. MacQuarrie*, 112 Cal.App.2d 771, 247 P.2d 133, 134 (1952).

The facts of *Sonbergh* illustrate the application of the traditional rule. In *Sonbergh*, the plaintiff alleged that he had been assaulted and had sought immediate medical attention to determine the extent of his injuries, but that x-rays and other diagnostic tests did not reveal any lasting damage. Eighteen months later, however, he was diagnosed with "organic brain and nervous injuries" causing dizziness, numbness, tremors, pain, loss of muscular control, speech impairment, and difficulty in walking. *Id.* Only then did he file suit against his attacker. The court rejected the plaintiff's argument that the statute of limitations should be tolled until he discovered the seriousness of his injuries. *Id.* Rather, it held that the limitations period began to run at the time of the attack because an action for battery is complete when the physical contact occurs. He therefore had a right to damages at that time which triggered the running of the limitations clock. The court concluded

that his claim was barred because it was not filed within one year of the assault. *Id.*

## 2. the development of the "actual and appreciable harm" test

*Sonbergh* emphasized that if the injury was compensable at law, it would trigger the running of the limitations period. Subsequent cases, however, developed the corollary of this proposition: if an injury did not give rise to a legal remedy, then it would not trigger the statute of limitations. Rather, the statute could not begin to run until the plaintiff suffered "actual and appreciable harm." The shift in language and emphasis could suggest that the courts were applying a new test for determining when the limitations period would begin to run. However, a careful reading of the cases reveals that none of them questioned or even challenged the traditional rule. In fact, they reaffirmed it.

The leading case using the "actual and appreciable harm" language is the decision of the California Supreme Court in *Davies v. Krasna,* 14 Cal.3d 502, 121 Cal.Rptr. 705, 535 P.2d 1161 (1975). In that case, the Court held that the limitations period for an action for breach of confidence began to run as soon as the defendant disclosed plaintiff's idea to potential buyers, thereby destroying its marketability. *Id.* In an oft-quoted passage, the Court stated that "although a right to recover nominal damages will not trigger the running of the period of limitation, the infliction of actual and appreciable harm, however uncertain in amount, will commence the statutory period." *Id.* at 515, 121 Cal.Rptr. 705, 535 P.2d 1161. Read in context, how-ever, that statement did not signal a shift in California limitations law. On the contrary, it was merely a restatement of the traditional rule.

In framing its "actual and appreciable harm" test, the *Davies* Court relied heavily on two prior decisions which had applied the traditional rule and basic principles of tort law. The Court first cited *Budd v. Nixen,* 6 Cal.3d 195, 98 Cal.Rptr. 849, 491 P.2d 433 (1971). *Davies,* 14 Cal.3d at 513, 121 Cal.Rptr. 705, 535 P.2d 1161. In *Budd,* the issue was whether the limitations period on an action for attorney malpractice began to run when the attorney committed the negligent act, or at some later time. *See Budd,* 6 Cal.3d at 197, 98 Cal.Rptr. 849, 491 P.2d 433. The *Budd* Court pointed out the basic principle that negligence does not give rise to an action in tort unless it produces damage.[2] *Id.* at 200, 98 Cal.Rptr. 849, 491 P.2d 433. Thus, until the plaintiff suffered damage as a result of the malpractice, he did not have any legal remedy and the statute of limitations could not begin to run. *Id.* The *Budd* Court elaborated that "[t]he mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm—not yet realized— does not suffice to create a cause of action for negligence." *Id.*

The holding in *Budd* is entirely consistent with the traditional rule that any injury, however slight, is sufficient to establish a cause of action for negligence and trigger the running of the statute of limitations. *Budd* merely clarifies that if there is *no* injury, then the cause of action is *not* complete and the statute does *not* begin to

---

**2.** Negligence that does not produce damage does not give rise to a cause of action in tort because damage is a necessary element of the tort of negligence. *See Alhino v. Starr,* 112 Cal.App.3d 158, 169 Cal.Rptr. 136, 147 (1980) ("If the allegedly negligent conduct does not cause damage, it generates no cause of action in tort."); *Oakes v. McCarthy Co.,* 267 Cal. App.2d 231, 73 Cal.Rptr. 127, 141 (1968) ("[W]ithout compensable damage there is no cause of action for negligence.").

run. The *Budd* Court was not departing from the traditional rule. Indeed, the *Budd* Court cited to *Sonbergh* with approval and repeated its holding: "The cause of action arises ... before the client sustains all, or even the greater part of the damages caused by his attorney's negligence. Any appreciable and actual harm flowing from the attorney's negligent conduct establishes a cause of action upon which the client may sue." *Id.* at 852 (citing *Sonbergh*, 112 Cal.App.2d 771, 247 P.2d 133 (1952)) (other citations omitted).

The court in *Davies* also relied on *Walker v. Pacific Indemnity Co.*, 183 Cal. App.2d 513, 6 Cal.Rptr. 924 (1960). In that case, an insurance broker had carelessly procured a $15,000 insurance policy after his client requested a $50,000 policy. *Id.* The court held that the limitations period did not begin to run until the client was held liable for an amount in excess of the policy limits. It reasoned that until then, "the fact of any damage at all was completely uncertain." *Id.* at 926. The court pointed out that the "mere possibility, or even probability, that an event causing damage will result from a wrongful act does not render the act actionable." *Id.* The court also rejected the defendant's argument that the plaintiff could have sued for nominal damages when the agent procured the wrong policy because "the mere possibility that one will be required to pay damages to a third party does not warrant even nominal damages." *Id.* (citing *Pac. Pine Lumber Co. v. W. Union Tel. Co.*, 123 Cal. 428, 56 P. 103 (1898)). Thus, since the wrongful act did not, in itself, give rise to a completed cause of action for negligence, it could not trigger the running of the limitations clock.

The holding in *Walker* is also consistent with the traditional rule. Like *Budd*, *Walker* merely observes that the plaintiff did not have a cause of action for negli-gence *until* he suffered compensable harm. Because his cause of action was not complete, the statute of limitations could not begin to run. The court went on to say that even if he could have sued for nominal damages, this action would have been "illusory" because the judge could have declined to award nominal damages, and even if he did award them, the plaintiff would not have been entitled to his costs. *Id.* This reasoning was pure surplusage, however, because the court did not hold, nor did it cite any case holding, that nominal damages were available in a claim for negligence. In any event, the court was certainly not holding that the statute of limitations does not begin to run on an action for negligence until the plaintiff could sue for damages that were more than "illusory." Hence, the opinion should not be read as departing from the traditional rule articulated in *Sonbergh*.

The two cases that *Davies* relied on simply reaffirm the traditional rule and apply it to situations in which the very fact of damage, not its extent, is in dispute. Neither case held or suggested that the plaintiff's injury had to reach some threshold of severity before it would trigger the running of the limitations clock. Read in context, then, *Davies*'s "actual and appreciable harm" test should be seen as simply a restatement of the traditional rule that a cause of action for negligence is complete and the statute begins to run when the plaintiff suffers *any* compensable injury. Indeed, the *Davies* Court concluded its review of California limitations law with the words, "[u]nder present authority, neither uncertainty as to the amount of damages nor difficulty in proving damages tolls the period of limitations." *Davies*, 14 Cal.3d at 514, 121 Cal.Rptr. 705, 535 P.2d 1161. In support, the *Davies* Court cited *Budd*, *Walker*, and *Sonbergh*, thus making clear that it was reaffirming the traditional rule expressed in those cases.

### 3. cases applying the "actual and appreciable harm" rule

Most of the California decisions since *Davies* have interpreted "actual and appreciable harm" as synonymous with "actionable" or "compensable" harm. For example, in *City of San Diego v. U.S. Gypsum Co.*, 30 Cal.App.4th 575, 35 Cal. Rptr.2d 876 (1994), the court cited *Davies* for the proposition that "the statute of limitations begins to run upon the occurrence of 'appreciable and actual harm, however uncertain in amount,' that consists of more than nominal damages." *Id.* at 881 (quoting *Davies,* 14 Cal.3d at 514, 121 Cal.Rptr. 705, 535 P.2d 1161).[3] Because any compensable injury will, by definition, give rise to damages that are more than nominal,[4] then any compensable injury, however slight, would be "actual and appreciable harm" that would commence the statutory period.[5]

The decision in *Priola v. Paulino,* 72 Cal.App.3d 380, 140 Cal.Rptr. 186 (1977), illustrates how California courts have interpreted *Davies* as reaffirming the traditional rule. In *Priola,* a husband sued for the loss of his wife's consortium approximately two years after she was injured in an auto accident. *Id.* at 186. He argued that his claim was not time-barred because, although his wife did suffer less serious injuries at the time of the accident, he did not lose her services until she developed Parkinson's disease more than a year later. *Id.* at 191–92. The court, however, reasoned that the statute of limitations attached as soon as the husband had a cause of action and that his cause of action was complete when his wife suffered her initial injuries because these reduced his wife's consortium "to some extent." *Id.* at 192.[6] The fact that more grievous injuries arose later did not affect the analysis. *See id.* In support of its conclusion, the *Priola* Court cited both *Davies* and *Sonbergh.* Clearly, in the *Priola* Court's view, *Davies* had simply reaffirmed the traditional rule expressed in *Sonbergh.*

### 4. the *DeRose* interpretation

A few cases since *Davies* have suggested that the actual and appreciable harm test requires something more than a showing of any compensable harm, however slight. These cases interpret "nominal damages" to include not just damages that are nominal in a technical legal sense, but also compensatory damages that are so small that it would be unreasonable to sue for

---

3. *See also Evans v. Eckelman,* 216 Cal.App.3d 1609, 265 Cal.Rptr. 605, 611 (1990) ("[T]he cause of action is complete on the sustaining of 'actual and appreciable harm,' on which the recoverable damages would be more than nominal.") (quoting *Davies,* 14 Cal.3d at 514, 121 Cal.Rptr. 705, 535 P.2d 1161); *Van Dyke v. Dunker & Aced,* 46 Cal.App.4th 446, 53 Cal.Rptr.2d 862, 866–67 (1996).

4. Nominal damages are awarded "for the infraction of a legal right, where the extent of loss is not shown, or where the right is one not dependent upon loss or damage." C. McCormick, Damages, sec. 20 at 85 (1935). Nominal damages are contrasted with small compensatory damages "which are measured by the loss actually suffered." *Id.* sec. 21 at 87.

5. *See also Garver v. Brace,* 47 Cal.App.4th 995, 55 Cal.Rptr.2d 220, 223 (1996) ("Any 'manifest and palpable' injury will commence the statutory period.") (quoting *Adams v. Paul,* 11 Cal.4th 583, 589, 46 Cal.Rptr.2d 594, 904 P.2d 1205 (1995)); *Marsha V. v. Gardner,* 230 Cal.App.3d 663, 231 Cal.App.3d 265, 281 Cal.Rptr. 473, 477 (1991).

6. *Accord Uram v. Abex Corp.,* 217 Cal.App.3d 1425, 266 Cal.Rptr. 695, 703 (1990) (holding that wife's cause of action for loss of her husband's consortium arose when he retired due to a work-related disability and her consortium "was to some extent reduced").

them. In contrast, "actual and appreciable harm" would be injury significant enough to justify bringing a lawsuit. These cases thus view *Davies* as a departure from or modification of the traditional rule.

The first case to adopt this interpretation of *Davies* was *DeRose v. Carswell*, 196 Cal.App.3d 1011, 242 Cal.Rptr. 368 (1987). The *DeRose* Court quoted *Davies*'s holding that "the period [of limitations] cannot run before plaintiff possesses a true cause of action, by which we mean that events have developed to a point where plaintiff is entitled to a legal remedy, not merely a symbolic judgment such as an award of nominal damages." *Id.* at 374 (quoting *Davies*, 14 Cal.3d at 514, 121 Cal.Rptr. 705, 535 P.2d 1161). However, the *DeRose* Court then added, "[w]e do not believe that the court in *Davies* can reasonably be interpreted as having used the term 'nominal' in the restrictive sense of 'one dollar.'" *Id.* at 376. It then went on to apply its understanding of *Davies* to an earlier related case. It concluded that the case was wrongly decided because it held that the limitations period began to run when the plaintiff first suffered a compensable injury, even though there was no indication that the injury was significant enough to justify a lawsuit. *See id.* at 376 n. 7

(criticizing *Martinez–Ferrer v. Richardson–Merrel, Inc.*, 105 Cal.App.3d 316, 164 Cal.Rptr. 591 (1980)). Although the *DeRose* Court did not explicitly say so, its reasoning suggests that it interpreted *Davies*'s use of the term "nominal" in the broader sense of "too insignificant to justify a lawsuit."

Although *DeRose* has been followed in a few other cases,[7] its interpretation of *Davies* and the term "nominal damages" is not persuasive. First, the entire discussion of *Davies* was dicta. The court was merely explaining that the *Martinez–Ferrer* Court had erred in holding that the statute of limitations began to run when the plaintiff suffered minor injuries, even though there was no indication that this injury was significant enough to justify a lawsuit. *DeRose*, 242 Cal.Rptr. at 376 n. 7. In *DeRose*, however, the court found that the plaintiff *had* suffered injuries significant enough to justify legal action more than a year before she filed. *Id.* at 374–75. Thus, even if *Martinez–Ferrer* had been decided under a liberal interpretation of *Davies*, the holding in *DeRose* would have been the same. Because the *DeRose* plaintiff's earlier injuries were significant, the statute of limitations had run under either interpretation of *Davies*. Hence,

---

**7.** Only two other courts have explicitly followed *DeRose*'s interpretation of *Davies. See Miller v. Lakeside Village Condo. Ass'n Inc.*, 1 Cal.App.4th 1611, 2 Cal.Rptr.2d 796, 802–03 (1991) (applying *DeRose*'s version of the actual and appreciable harm test but nonetheless finding that the suit was barred because the plaintiff had suffered harm significant enough to justify a lawsuit more than one year before filing); *Sanderson v. Int'l Flavors & Fragrances, Inc.*, 1996 WL 529274, at *7 (C.D.Cal. July 11, 1996) (relying on *DeRose* in holding that the statute of limitations did not begin to run when the plaintiff first experienced symptoms of a serious injury because "a jury could find that the symptoms themselves were so minor that it would have been unreasonable to sue for them").

A third case used language echoing *DeRose*, but without directly citing it. *See Shoemaker v. Myers*, 2 Cal.App.4th 1407, 4 Cal.Rptr.2d 203, 215 (1992) (holding that the statute of limitations did not begin to run until plaintiff was terminated because until then, "he did not suffer appreciable harm sufficient to justify legal action").

None of these cases, however, analyzed whether *DeRose*'s interpretation of *Davies* was correct or analyzed the *Davies* holding in light of the cases the California Supreme Court relied on. Thus, they do not provide any independent support for the *DeRose* Court's interpretation of *Davies*'s holding or the term "nominal damages."

*DeRose*'s more liberal interpretation of *Davies* did not affect the result. Thus, the entire discussion of the *Davies* test was irrelevant to the holding and result in *De-Rose*.

Second, the *DeRose* Court provided no authority to support its view that "nominal" could not reasonably be interpreted as meaning one dollar. Indeed, this interpretation seems obligatory when one considers the larger context in which the *Davies* Court used the term. The phrase "nominal damages" has a well-defined meaning in the law and it is eminently reasonable to assume that the California Supreme Court had that meaning in mind when it used the term. Moreover, read in context, the *De-Rose* Court's rule that a right to recover only nominal damages will not commence the limitations period alluded to a series of prior decisions that had reaffirmed the traditional rule that the limitations period begins to run as soon as the plaintiff suffers any compensable injury, however slight. The *DeRose* interpretation of "nominal" is plainly inconsistent with the traditional rule and therefore interprets *Davies*'s use of the word without regard to its context.

## C. When Did Plaintiffs First Suffer Actual and Appreciable Harm?

With the preceding review of California case law in mind, this Court now determines how the "actual and appreciable harm" test applies to a situation in which the plaintiff initially suffers only minor injuries, but later suffers more substantial damage. Specifically, this Court finds that the "actual and appreciable harm" test must be interpreted in a manner consistent with the traditional rule that any compensable injury, however slight, will commence the statutory period of limitations. Thus, this Court concludes that any compensable harm constitutes "actual and ap-

preciable harm" and triggers the running of the limitations clock.

■ Under this interpretation, Plaintiffs' claims in this case are clearly time-barred because both Crowley and Watts suffered compensable injury on the day of the accident. Both testified that they experienced several minutes of extreme fear on that day. This type of emotional distress is compensable in California. *See Thing v. LaChusa*, 48 Cal.3d 644, 646, 257 Cal.Rptr. 865, 771 P.2d 814 (1989). Thus, Plaintiffs had a right to sue for compensatory damages at that time and the limitations clock began to run immediately. The fact that these damages might have been small is irrelevant because *any* compensable harm is sufficient to trigger the running of the statute. Likewise, the fact that more substantial injuries emerged later is irrelevant because a single tort can give rise to only one action for damages. *See, e.g., Panos v. Great W. Packing Co.*, 21 Cal.2d 636, 134 P.2d 242 (1943). Thus, the statute of limitations on any claim arising from the accident on March 5, 2000, expired one year later. Accordingly, Crowley and Hess' claims, filed on August 10, 2001, over eighteen months after the accident, are barred.

## D. The Discovery Rule

Plaintiffs also argue that even if the statute of limitations began to run on the day of the accident, it was tolled because they were not aware of their injuries. In making this argument, Plaintiffs rely on the so-called "discovery rule," which provides that a cause of action for personal injury does not accrue until the plaintiff is aware of his injury and its negligent cause. *See, e.g., Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103, 1109, 245 Cal.Rptr. 658, 751 P.2d 923 (1988).

■ The discovery rule, however, does not apply to this case because Plaintiffs

were fully aware of the injuries they suffered at the time of the accident. Both Plaintiffs testify that they were fully conscious during the accident, were frightened, and were aware of being frightened. Moreover, Plaintiffs do not allege that they were not aware that the accident was due to someone's negligence. Thus, on the date of the accident, Plaintiffs were aware of their injury and its negligent cause. Hence, the discovery rule does not apply. The fact that Plaintiffs did not suffer any long-term effects until several months later is irrelevant because the same statute of limitations applies to all injuries resulting from a single tortious act.

## V. Sanctions

■ Defendants have asked this Court to impose sanctions on Plaintiffs' counsel, arguing that Plaintiffs' counsel should have known that this action was time-barred and therefore frivolous. Under Federal Rule of Civil Procedure 11, a court may sanction an attorney or party who prosecutes an action that is devoid of legal or factual support. *See* Fed.R.Civ.P. 11. This case is not such an action, however. California case law does not unambiguously define what constitutes "actual and appreciable harm" that will trigger the running of the limitations clock. Hence, it was not unreasonable for Plaintiffs' counsel to file this action.

## CONCLUSION

For all the foregoing reasons, this Court concludes that the statute of limitations on Plaintiffs' claims began to run on the day of the accident, March 5, 2000. Plaintiffs' claims, filed over eighteen months later, are therefore barred by California's one-year statute of limitations for actions for personal injury based on negligence. Accordingly, this Court **GRANTS** Defendants' Motion for summary judgment and will enter judgment in favor of Defendants. Defendants' Motion for sanctions is **DENIED**.

**IT IS SO ORDERED.**