[No. B158824. Second Dist., Div. Five. Mar. 30, 2004.]

SUPERIOR GUNITE, Plaintiff and Respondent, v.
RALPH MITZEL INC., Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts A, C, D and E of the Discussion.

302

COUNSEL

Andrade & Associates, Gray Gieleghem Seltz & Knudsen, Seltz & Knudsen, J. Neil Gieleghem and Thomas P. Seltz for Defendants and Appellants.

Hunter, Molloy & Salcido, John Logan Hunter and Frank W. Molloy for Plaintiff and Respondent.

OPINION

MOSK, J.—

## INTRODUCTION

Defendant and appellant Ralph Mitzel Inc. (Mitzel), a general contractor, appeals from a judgment after a court trial awarding its sub-subcontractor, plaintiff and respondent Superior Gunite (Superior), $413,177 in damages for breach of contract and negligence, $299,000 in attorney fees, $45,334 in prejudgment interest and $85,000 in costs. The court awarded Superior damages for its claim of Mitzel's negligence and for claims assigned to Superior by Mitzel's subcontractor, Pinnacle Concrete Construction (Pinnacle). Superior had entered into a sub-subcontract with Pinnacle and had no

contractual privity with Mitzel. Pinnacle's breach of contract claim assigned to Superior consisted of two elements: (i) Pinnacle's claim for breach of the Mitzel-Pinnacle subcontract by Mitzel resulting in $7,015 in damages; and (ii) Superior's claim for $406,163 in labor cost overruns caused by Mitzel's acts and omissions.

Mitzel does not challenge the negligence award in favor of Superior, except as to the calculation of damages. The trial court used the same methodology to calculate Superior's labor cost overrun damages at $406,163 under both the contract claim and the negligence claim. Mitzel contends that Superior lacks privity with Mitzel and that there was no justification for the $406,163 in damages to Superior for a breach of contract claim. These contentions bear on whether Superior is entitled to interest on, and attorney fees attributable to, the $406,163 award, but do not affect the compensatory award of $406,163 based on negligence, which we affirm.

In the published portion of this opinion, we hold that the trial court's conclusion based on a contract claim by Superior against Mitzel was incorrect because they were not in privity. At the close of evidence the trial court dismissed as not proven a claim that Pinnacle had the right to assert Superior's claim on a "pass-through" theory, which theory, if applicable, could justify a circumvention of the privity requirement. Superior, the assignee of Pinnacle's claims, failed to challenge this dismissal. Under the trial court's rationale, the only contractual claim that Pinnacle could and did assign to Superior was Pinnacle's claim against Mitzel for $7,015 for breach of the Pinnacle-Mitzel subcontract, and we affirm that award. Thus, Superior is entitled to contractual interest and attorney fees only on the $7,015 award and not on the $406,163 award. We remand the matter to the trial court to determine how much interest, if any, should be awarded with respect to the $406,163 negligence award and to assess attorney fees in connection with the $7,015 award.

In the unpublished portion of this opinion, we hold that the trial court's judgment is not inconsistent with its earlier summary adjudication of issues; that the trial court did not err in the methodology used to compute damages; that the damages were supported by substantial evidence; that the statement of decision was legally adequate; and that there were no evidentiary errors.

## BACKGROUND[1]

Mitzel contracted with the Pomona School District to perform foundation work and grading at the Diamond Ranch High School in the City of Pomona

---

[1] We state the facts in accordance with the general rule that the evidence should be set forth in the light most favorable to the judgment. (*Gyerman v. United States Lines Co.* (1972) 7 Cal.3d 488, 492, fn. 1 [102 Cal.Rptr. 795, 498 P.2d 1043].)

for $11,146,270 and served as the general contractor on this project. Mitzel subcontracted the structural concrete work for the project to Pinnacle for a contract price of $1,968,875. Under the terms of its subcontract, Pinnacle was responsible for constructing a retaining wall and various concrete flatwork. As the general contractor for the project, Mitzel was responsible for providing access and power to the site.

Pinnacle expected to commence its work on the project in February 1996 and began mobilizing on the site at that time. Mitzel's acts precluded Pinnacle from commencing work until June or July 1996. During this time, Pinnacle experienced financial difficulties that caused it to seek help in fulfilling its contractual obligations. Pinnacle eventually filed a petition in bankruptcy.

Pinnacle first sought to have another concrete subcontractor take over Pinnacle's subcontract with Mitzel. Mitzel, however, refused to allow the substitution. Pinnacle then proposed to enter into a joint venture with Superior to complete the work. Mitzel would not permit a joint venture, in part because doing so would cause it to be in violation of the minority-owned business requirements of Mitzel's contract with the Pomona School District. With Mitzel's knowledge and consent, Pinnacle then entered into a subcontract with Superior for Superior to construct the foundation and retaining wall (referred to as "Bid item No. 20"). Pinnacle retained the obligation to perform the concrete flatwork (referred to as "Bid item No. 21"). Superior completed all of the work for the project, including the concrete flatwork covered by Bid item No. 21, even though the flatwork was not expressly covered by its written contract with Pinnacle; there was evidence of an understanding among Pinnacle, Mitzel and Superior for Superior to do this work.

Superior encountered conditions caused by Mitzel that made its construction work more difficult and time-consuming than anticipated. These conditions included uncommunicated changes to the project; inadequate staffing; improper scheduling; requiring construction out of the planned sequence; failing to provide access to the site; the presence of a haul road used by Mitzel to transport dirt and gravel through the area where the retaining wall was to be constructed; the absence of temporary power in Superior's construction site; stockpiling of soil by Mitzel in a location that hindered construction; and insufficient site drainage that hampered site access during wet weather. Superior claimed that these conditions caused it to incur damages that consisted primarily of labor cost overruns.

Superior filed a complaint against Pinnacle, Mitzel and the Pomona School District, asserting causes of action for breach of contract, unjust enrichment,

negligence and negligent interference with economic relationship. Superior dismissed with prejudice its complaint against the Pomona School District and elected not to pursue its claim against Pinnacle.[2] Superior and Pinnacle entered into a Claim Consolidation and Assignment Agreement (assignment agreement) that provided as follows: "In consideration of Superior Gunite's agreement to assert the rights of Pinnacle against Ralph D. Mitzel, including any and all pass-through claims of Superior Gunite against Ralph D. Mitzel, Pinnacle hereby sells, transfers and assigns to Superior the right, title and interest in all claims held by Pinnacle, or which may be asserted by Pinnacle, including the rights of Superior Gunite against Ralph D. Mitzel on a pass through basis as a subcontractor to Pinnacle. Pinnacle hereby grants to Superior Gunite full power to collect, sue for (either in its own or Superior's name), compromise, or in any other manner enforce the rights to the above-described claims of Pinnacle and Superior Gunite in Superior Gunite's name or otherwise. Pinnacle shall cooperate and assist Superior in any reasonable manner. [¶] It is agreed that Pinnacle remains liable to Superior on any and all pass through claims to the extent that Mitzel is finally determined to be liable to Pinnacle . . . ."

The Mitzel-Pinnacle contract contained the following provisions: "All work covered by this agreement done at the site of construction or in preparing or delivering materials or equipment, or any or all of them to the site shall be at the risk of SUBCONTRACTOR. [¶] Should SUBCONTRACTOR be delayed in the prosecution or completion of the work by the act, neglect or default of OWNER, of ARCHITECT, or of CONTRACTOR, or should SUBCONTRACTOR be delayed waiting for materials, if required by this CONTRACT to be furnished by OWNER or CONTRACTOR, or by damage caused by fire or other casualty for which SUBCONTRACTOR is not responsible, or by the combined action of the workmen in no wise caused by, or resulting from default or collusion on the part of SUBCONTRACTOR, or in the event of a lockout by CONTRACTOR, then the time herein fixed for the completion of the work shall be extended the number of days that SUBCONTRACTOR has thus been delayed, but no allowance or extension shall be made unless a claim therefore is presented in writing to the CONTRACTOR within 48 hours of the commencement of such delay, and under no circumstances shall the time of completion be extended to a date which will prevent CONTRACTOR from completing the entire project within the time that OWNER allows CONTRACTOR for such completion. [¶] No claims for additional compensation or damages for delays, whether in the furnishing of material by CONTRACTOR, or delays by other subcontractors or OWNER, will be allowed by the CONTRACTOR, and said extension of time for the completion shall be the sole remedy of SUBCONTRACTOR,

---

[2] Pinnacle appears not to have been served, and Superior omitted Pinnacle from the caption in the third amended complaint.

provided, however, that in the event, and in such event only, that CONTRACTOR obtains additional compensation from OWNER on account of such delays. SUBCONTRACTOR shall be entitled to such portion of the additional compensation so received by CONTRACTOR from OWNER as is equitable under all of the circumstances. Nothing herein contained shall require CONTRACTOR to make any claim against OWNER for such delays, and it is specifically agreed that the failure of CONTRACTOR to prosecute any such claim against OWNER shall not entitle SUBCONTRACTOR to any claim for damages against CONTRACTOR. . . . [¶] . . . [¶] Under no conditions shall SUBCONTRACTOR make any changes, either as additions or deductions, without the written order of the CONTRACTOR and CONTRACTOR shall not pay any extra charges made by the SUBCONTRACTOR that have not been agreed upon in writing by CONTRACTOR; and, in no event, shall CONTRACTOR make payment for any such extra charges unless and until the CONTRACTOR itself receives payment from OWNER. SUBCONTRACTOR shall submit immediately to the CONTRACTOR written copies of his firm's cost or credit proposal for chages [*sic*] in the work. Disputed work shall be performed as ordered in writing by the CONTRACTOR and the proper cost or credit breakdowns therefore shall be submitted without delay by SUBCONTRACTOR to CONTRACTOR. [¶] SUBCONTRACTOR shall give notice of claim relating to any work for which extra compensation is asserted within 30 days after such work is performed or SUBCONTRACTOR shall be deemed to have abandoned any claim therefore." An addendum to the contract provides, "Pinnacle shall be entitled to equitable adjustments for additional costs due to unanticipated project delays or accelerations caused by others whose acts are not Pinnacle's responsibility and due to time extensions for unavoidable delays."

The Pinnacle-Superior contract included the following provisions [with Pinnacle labeled as the contractor and Superior as the subcontractor]: "*DELAY.* In the event that Subcontractor's work is delayed for any reason, including acts of the Contractor, Subcontractor's sole remedy shall be an extension of time equal to the period of delay, provided Subcontractor has given Contractor written notice of the commencement of delay within 48 hours of its occurrence. Subcontractor shall be entitled to an equitable portion of any amount recovered by Contractor, minus an aliquot share of pursuing said claim. This provision shall not be construed to require the Contractor to pursue any delay claim against the Owner or any other party. [¶] *CHANGES IN WORK.* Subcontractor shall make no changes in the work covered by this Agreement without written direction from the Contractor. Subcontractor shall not be compensated for any change which is made without such written direction. No changes in the work covered by this Agreement shall exonerate any surety or any bond given in connection with this Agreement."

The trial court granted, in part, Mitzel's motion for summary adjudication of issues, ruling that the issues to be adjudicated were limited to the rights of Pinnacle on its own behalf arising out of the Mitzel-Pinnacle contract. When counsel sought clarification of the trial court's rulings, the trial court in a colloquy expressly declined to preclude Superior from seeking to recover its own damages for a breach of contract claim that could be asserted by Pinnacle against Mitzel, which claim Pinnacle had assigned back to Superior.

At trial, Superior's expert testified concerning the "total cost method" of calculating Superior's damages. That method is based on the difference between the bid price and actual costs. Mitzel objected to this testimony, claiming that it differed from that offered during the expert's deposition, and therefore was in violation of the court's in limine order limiting expert testimony to opinions given during deposition. At trial, Superior's expert testified that he had incorrectly used Superior's bid as the basis for calculating damages in his deposition and that he should have used Pinnacle's bid instead. The trial court overruled Mitzel's evidentiary objection, stating that the in limine ruling did not preclude an expert from correcting inaccuracies in his deposition testimony. The expert's trial testimony, with the correction, actually decreased Superior's damages.

At the close of evidence, the trial court found that Superior's cause of action for its claim for pass-through damages "has not been proven." The trial court found Mitzel liable to Superior—on its own behalf for negligence and as an assignee of Pinnacle for breach of contract. The trial court accepted Superior's calculation of damages using the total cost method, modifying it by excluding certain items. The trial court awarded Superior $7,015 in damages incurred by Pinnacle because of the delayed commencement of the project caused by Mitzel ("false start" damages); $406,163 in labor cost overruns of Superior; and $137,721 in prejudgment interest.

Mitzel filed a request for statement of decision that presented 92 questions for the trial court to answer concerning the bases for its decision. The trial court issued a statement of decision that answered every question.

Although the statement of decision includes the $406,163 award as part of the negligence claim, the trial court stated, "Plaintiff's overruns/damages were caused by both a breach of contractual obligations by the defendant and the negligence of the defendant." The trial court's responses to certain questions in Mitzel's request for a statement of decision state that the trial court relied on a contract theory as well as negligence in arriving at $406,163 of the

damages. The statement of decision does not state that the trial court applied a "pass-through" theory—i.e. that Pinnacle had a claim against Mitzel based on Superior's damages that Pinnacle could "pass-through" to Mitzel. The statement of decision included the following:

"8. Did PINNACLE at any time submit a written claim to MITZEL for any damages SUPERIOR incurred on the Project?

"8. The court did not find or address the issue whether Pinnacle submitted any claim for damages to Mitzel on behalf of Superior. [¶] . . . [¶]

"35. Was the only evidence provided by Plaintiff and accepted by the Court as to damages the amount of $406,163.00, which constituted the difference between the labor amount bid by SUPERIOR for its contract work for bid item 20, less the actual labor costs incurred by SUPERIOR for performing both bid items 20 and 21, as set forth in Plaintiff's Exhibit 115(a)?

"35. No. Plaintiff presented evidence of it's [sic] costs, expenses, expenditures, and responsibilities under the contract, however, due to the nature of the contract, the responsibilities of the parties, the breaches by the defendant, negligence of the defendant, actual damages sustained by plaintiff were impossible to calculate. The court accepted $406,163 as damages sustained by the plaintiff. [¶] . . . [¶]

"59. Is Plaintiff entitled to pre-judgment interest on its cause of action for damages for negligence notwithstanding California Civil Code §§ 3287 and 3291?

"59. Plaintiff's overruns/damages were caused by both a breach of contractual obligations by the defendant and the negligence of the defendant. Under a strict contract analysis, the breaches by the defendant caused plaintiff's overruns which resulted in the damage award pursuant to the modified cost analysis.[3]

"60. How did the Court arrive at its calculation for pre-judgment interest as to Plaintiff's claim for negligence, including the principal amount, the interest rate, and the time period?

"60. The Court relied on the breach of contract theory for the pre-judgment interest award."

---

[3] Mitzel listed each of the foregoing questions in its request for statement of decision under the caption "Third Cause of Action For Negligence—Damages of Pinnacle and Superior," and the trial court issued its responses to those questions in the statement of decision under an identical caption.

Mitzel filed an objection to the statement of decision, claiming that certain of the trial court's responses were incomplete, inconsistent or incorrect as a matter of law, and requested that the trial court issue an amended statement of decision. The trial court declined to do so.

After the trial, Superior filed a motion for attorney fees and costs. Superior based its motion for attorney fees on Civil Code section 1717 and on an attorney fees provision in Mitzel's subcontract with Pinnacle. The attorney fees provision in that contract provided as follows: "In the event either CONTRACTOR or SUBCONTRACTOR institutes suit in court against the other party, or against the surety of such party, in connection with any dispute or matter arising under this Agreement, the party which prevails in that suit shall be entitled to recover from the other its attorney's fees in reasonable amount which shall be determined by the court and included in the judgment in said suit."

Mitzel argued that Superior's attorney fees award should be reduced because the only contract claim Superior had prosecuted at trial was the contract claim Pinnacle had assigned to Superior, which claim resulted in an award of only $7,015. The trial court disagreed, noting that Superior had performed the entirety of the work covered by the contract between Mitzel and Pinnacle and that Superior had obtained an assignment of Pinnacle's contract rights.

On March 29, 2002, the trial court entered a judgment stating that "Superior Gunite, in its own right, and as an assignee of Pinnacle Concrete Construction, Inc.'s rights against Defendant Ralph D. Mitzel, Inc. shall have judgment against Ralph D. Mitzel Inc. in the aggregate principal amount of $413,177 on the First Cause of Action for Breach of Contract and the Third Cause of Action for Negligence in the Third Amended Complaint." Mitzel took nothing by way of its cross complaint. The judgment also awarded Superior $299,000 in attorney fees, $45,334 in prejudgment interest, and $85,000 in costs. Mitzel filed a timely notice of appeal from the judgment.

## DISCUSSION

We discuss the applicable standard of review as we discuss each of the issues below.

A. *Consistency of the Judgment With the Summary Adjudication Ruling**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

˙See footnote, *ante,* page 301.

### B. *Contract Claims of Superior*

The trial court awarded Superior $406,163 in labor cost overruns as breach of contract damages even though Superior was not in privity with Mitzel. The possible theories do not in this case support such an award. Thus, Superior's contract damages in the amount of $406,163 cannot be justified.

#### 1. *Pinnacle's Contract Remedies Against Mitzel*

Pinnacle assigned to Superior "the right, title and interest in all claims held by Pinnacle, or which may be asserted by Pinnacle" under Pinnacle's contract with Mitzel. Among those possible claims was Pinnacle's false start claim, which claim resulted in a damage award of $7,015.

There is no evidence that Pinnacle asserted or had any other claim, except for the possible right to assert Superior's claim for labor cost overruns, which we discuss *post*. Pinnacle had certain remedies under its contract with Mitzel—for example, for nonpayment, termination, agreed-upon changes, and requested overtime. The contract also contained a clause providing that "Pinnacle shall be entitled to equitable adjustments for additional costs due to anticipated project delays or accelerations caused by others whose acts are not Pinnacle's responsibility and due to time extensions for unavailable delays." But the trial court found that the only contract claim Pinnacle had was the false start claim.

There is no indication that Superior, as Pinnacle's assignee, purported to assert claims under any specific provisions of the Mitzel-Pinnacle contract, or that the trial court based its decision on violations of such provisions. Neither party has invoked any of these provisions on appeal. Although the trial court in its statement of decision acknowledged the availability of equitable adjustments under the Mitzel-Pinnacle contract for costs due to delay (in response to a question in Mitzel's request for statement of decision regarding notice), the trial court's damage award to Superior excluded "delay damages."

Accordingly, the damages awarded Superior were not based on any of Pinnacle's assigned claims for a breach of any specific provision in the Pinnacle-Mitzel agreement—other than the false start claim that resulted in $7,015 in damages.

#### 2. *A Potential Superior Claim Against Pinnacle as a Component of Pinnacle's Damages*

Pinnacle's contract claims against Mitzel could not include amounts attributable to a breach of contract claim by Superior against Pinnacle. The trial court did not focus on damages that Superior might assert against Pinnacle

for breach of the Pinnacle-Superior contract.[4] Moreover, there is no finding that Pinnacle could assert as its damages a claim against it by Superior. Damages for breach of contract are those that will "compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." (Civ. Code, § 3300.) California law suggests that, "the mere possibility that one will be required to pay damages to a third party does not warrant even nominal damages." (*Walker v. Pacific Indemnity Co.* (1960) 183 Cal.App.2d 513, 517 [6 Cal.Rptr. 924]; see also *Pacific Pine Lumber Co. v. Western Union Tel. Co.* (1899) 123 Cal. 428 [56 P. 103]; *Crowley v. Peterson* (C.D. Cal. 2002) 206 F.Supp.2d 1038, 1044; but see 24 Williston on Contracts (4th ed. 2002) § 66:68, pp. 737–738 ["Indeed, in a resale situation, the buyer has been permitted to claim as consequential damages from the seller the amount of the buyer's potential liability to its customer; if the buyer establishes the probability that it will be sued by the customer, it is immaterial that the buyer has not yet been sued and made to bear the loss, and recovery is measured by the probable liability of the buyer to the customer"]; 4A Anderson, Uniform Commercial Code (3d ed. 1997) § 2-715:312, p. 656.) In a construction case, a New York court held that until a contractor has paid claims of subcontractors, its claims against the owner "are and will continue to be premature until [it] makes such payments." (*Mars Associates, Inc. v. New York City Educational Constr. Fund* (1987) 126 A.D.2d 178 [513 N.Y.S.2d 125, 133].)

One might argue if the requirement to pay is a probability, that liability might be included in damages. Yet, our Supreme Court has noted, in the context of indemnity, that an indemnitor is not obligated for a claim made against an indemnitee until the indemnitee has incurred an actual loss by having paid the claim. (*Western Steamship Lines, Inc. v. San Pedro Peninsula Hospital* (1994) 8 Cal.4th 100, 110 [32 Cal.Rptr.2d 263, 876 P.2d 1062] [" 'a fundamental prerequisite to an action for partial or total equitable indemnity

---

[4] There is a conflict in authorities over whether and to what extent a prime contractor is liable to a subcontractor for acts or omissions of the owner. (See, e.g., *Triangle Sheet Metal Works, Inc. v. James H. Merritt & Co.* (1991) 79 N.Y.2d 801 [580 N.Y.S.2d 171, 172, 588 N.E.2d 69] ["general rule that absent a contractual commitment to the contrary, a prime contractor is not responsible for delays that its subcontractor may incur unless those delays are caused by some agency or circumstance under the prime contractor's direction or control"].); *Barry, Bette & Led Duke, Inc. v. State* (1998) 240 A.D.2d 54 [669 N.Y.S.2d 741, 743] [notes distinction between New York law and Court of Claims cases]; 2 Stein, Construction Law (2003) § 5B.02(4)(f), p. 5B75 [acknowledges "split authority" and says that the "better view is that the contractor should be liable if the subcontractor is prevented from performing its work according to a schedule which is part of the subcontract"]; *St. Paul Dredging Co. v. State* (1961) 259 Minn. 398 [107 N.W.2d 717, 724]; cf. *D.A. Parrish & Sons County Sanitation Dist.* (1959) 174 Cal.App.2d 406, 415–416 [344 P.2d 883].)

is an actual monetary loss through payment of a judgment or settlement' "]; *E.L. White, Inc. v. City of Huntington Beach* (1978) 21 Cal.3d 497, 506 [146 Cal.Rptr. 614, 579 P.2d 505] ["cause of action for implied indemnity does not accrue or come into existence until the indemnitee has suffered actual loss through payment"]; *Gribaldo, Jacobs, Jones & Associates v. Agrippina Versicherunges A G.* (1970) 3 Cal.3d 434, 447 [91 Cal.Rptr. 6, 476 P.2d 406] ["an indemnitor is not liable for a claim made against the indemnitee until the indemnitee suffers actual loss by being compelled to pay the claim"].) The problem does not normally arise in construction disputes among private parties because liabilities between contractors, subcontractors and owners are often determined in one action (*D.A. Parrish & Sons v. County Sanitation Dist., supra,* 174 Cal.App.2d at p. 415 (Tobriner, J.) [joinder]) or by a declaratory relief action.

Even if Pinnacle's damages could include the amount of Pinnacle's liability to Superior, in the instant case, the claims and the damages awarded were not based on any such liability or on a breach of Pinnacle's contract with Superior. Superior did not pursue any claims against Pinnacle at trial, nor was there any assertion that Superior's damages were based on any claim it had against Pinnacle.

We cannot assume that the contractual damages arising out of the Mitzel-Pinnacle contract were identical to the contractual damages arising out of the Pinnacle-Superior contract. For example, the Pinnacle-Superior contract excludes a claim by Superior against Pinnacle for damages attributable to delay. That contract accords Superior the right to an "equitable portion of any amount recovered by the contractor" for such damages, but does not obligate Pinnacle to pursue any such claim. The contract also provides that Superior would not be compensated for any change in the work not authorized in writing by Pinnacle. The damages awarded Superior included at least some elements attributable to delay, even if not labeled as delay damages.[5] It appears that the Pinnacle-Superior contract, by its terms, prevents some of the damages awarded to Superior. The failure of the trial court or the parties to reconcile the damages awarded with the remedies available under the Pinnacle-Superior contract precludes a conclusion that Pinnacle's damages include claims asserted against it by Superior.

---

[5] For example, the trial court said in its statement of decision, "Plaintiff was entitled to claim money for delay caused by unabated muddy conditions and delay caused by landslide re-mediation by defendant."

### 3. *Pass-Through or Representative Theory*

In order to avoid the consequences of lack of privity with Mitzel and other barriers to a Pinnacle claim based on Superior's damages, Superior asserts that the trial court award of $406,163 in breach of contract damages is based on a "pass-through" or representative theory. That is, among Pinnacle's claims against Mitzel assigned to Superior was one that "passes-through" Superior's claim for damages. In the assignment agreement, Pinnacle and Superior seemingly contemplate the existence of pass-through claims by providing that Pinnacle is liable to Superior to the extent Mitzel is liable to Pinnacle for such pass-through claims.

Pass-through or representative claims are claims asserted by a prime contractor on behalf of a subcontractor against the other party to the prime contract (typically a government project owner). (*Howard Contracting, Inc. v. G.A. MacDonald Construction Co.* (1998) 71 Cal.App.4th 38, 60 [83 Cal.Rptr.2d 590]; Calvert et al., *Pass Through Claims and Liquidation Agreements* (Oct. 1998) 18 Construction Lawyer 29; Kester et al., *Subcontractor Pass Through Claims and Sponsorship Litigation* (Sept. 2003) Construction Briefings No. 2003-9.) Pass-through claims originated as a means of compensating lower tier subcontractors on public works projects who suffered damages as the result of governmental agency delays or misconduct but had no claim against the government contractor, either in tort because of governmental immunity or in contract because of a lack of privity. (Kates, *Facilitating Subcontractor's Claims Against the Government through the Prime Contractor as the Real Party in Interest* (1983) 52 Geo. Wash. L.Rev. p. 146, fn. 4.) In addition, subcontractors might have no recourse in some jurisdictions that preclude tort recovery of economic loss when there is no physical damage and when there is no contractual privity between the claimant and the responsible party.[6] As the court in *Howard Contracting, Inc. v. G.A. MacDonald Construction Co., supra*, 71 Cal.App.4th at page 60 said, "[w]hen a public agency breaches a construction contract with a contractor, damage often ensues to a subcontractor. In such a situation, the subcontractor

---

[6] McCarter, *The Economic Loss Doctrine In Construction Litigation* (July 1998) 18 Construction Lawyer 21; Feinman, *Economic Negligence In Construction Litigation* (Aug. 1995) 15 Construction Lawyer 34. California law does allow for such recovery. (See *J'Aire Corp. v. Gregory* (1979) 24 Cal.3d 799 [157 Cal.Rptr. 407, 598 P.2d 60]; *North American Chemical Co. v. Superior Court* (1997) 59 Cal.App.4th 764, 780–785 [69 Cal.Rptr.2d 466]; *Chameleon Engineering Corp. v. Air Dynamics, Inc.* (1980) 101 Cal.App.3d 418 [161 Cal.Rptr. 463].)

may not have legal standing to assert a claim directly against the public agency due to a lack of privity of contract, but may assert a claim against the general contractor. In such a case, a general contractor is permitted to present a pass-through claim on behalf of the subcontractor against the public agency."

The trial court did not apply a pass-through theory here. At the close of evidence, the trial court dismissed such a claim as not having been proven. In its statement of decision, the trial court said that it did not "address" whether "Pinnacle submitted any claim for damages to Mitzel on behalf of Superior." The only "contract" claim remaining was the first cause of action alleging that Pinnacle and its subcontractor were third party beneficiaries of Mitzel's contract with the Pomona School District. The trial court did not rely on this cause of action or on any theory of a breach of the Mitzel-Pomona School District contract.[7]

Although the parties alluded to the pass-through theory from time to time, the case was not tried on that basis. The claimed damages were not those that Superior had against Pinnacle that were being passed-through to Mitzel. (See *Howard Contracting, Inc. v. G.A. MacDonald Construction Co., supra,* 71 Cal.App.4th at p. 60.) Superior incorrectly states that the trial court relied on a pass-through theory, ignoring that the trial court had dismissed that theory at the close of evidence. Superior did not challenge the dismissal on appeal, nor did Superior identify on appeal the facts supporting the use of a pass-through theory in this case. (See *Maurice L. Bein, Inc. v. Housing Authority* (1958) 157 Cal.App.2d 670, 679 [321 P.2d 753] [failure to identify facts to support conclusions estops party from asserting position].) We therefore need not consider the pass-through theory or resolve the issues of whether or not a pass-through claim can be asserted here.[8]

---

[7] See *COAC, Inc. v. Kennedy Engineers* (1977) 67 Cal.App.3d 916 [136 Cal.Rptr. 890] [contractor as third-party beneficiary of contract between engineer and county water district].) Because the only contract cause of action remaining was the third party beneficiary cause of action, one could argue that there was no basis for the $7,015 award. As that problem was not raised, any defect based on the pleadings concerning this $7,015 award has been waived. (*Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 [188 Cal.Rptr. 115, 655 P.2d 317].)

[8] These issues include whether a pass-through claim normally applied to governmental entities can be applied to a nongovernmental entity in California even though a tort remedy for economic losses is available between parties not in privity with each other; whether a pass-through claim can be assigned back to the damaged party; and whether the assignment agreement is sufficient to establish Pinnacle's liability to Superior for application of the pass-through theory.

■ There is no basis to justify the trial court's award of $406,163 attributable to contract damages. The trial court found that Superior incurred damages in the amount of $406,163, whether under a negligence theory or under a breach of contract theory. Reversing as to the contract theory has no effect on the $406,163 of the damage award under a negligence theory. On remand, however, the trial court must omit any interest and attorney fees attributable to the $406,163 portion of the award based on Superior's contract claims.

C.–E.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### F. Prejudgment Interest

■ The statement of decision provides that prejudgment interest was awarded on the contract claims, not on the negligence claim. Because we have affirmed the $7,015 award arising out of Pinnacle's claim for breach of its contract with Mitzel, which claim Pinnacle assigned to Superior, Superior is entitled to interest on that award. (Civ. Code, § 3287.) Because the $406,163 award to Superior can only be premised on negligence, not contract, Superior is not entitled to interest on this amount based on a breach of contract theory. ■ Interest on the negligence award can only be awarded either if the damages are "certain, or capable of being made certain by calculation" (Civ. Code, § 3287, subd. (a)) or, in the discretion of the trier of fact (Civ. Code, § 3288).[10] We remand the matter to the trial court to determine whether prejudgment interest should be awarded on the $406,163 negligence award, and if so, in what amount. (*Bullis v. Security Pac. Nat. Bank* (1978) 21 Cal.3d 801, 814, fn. 16 [148 Cal.Rptr. 22, 582 P.2d 109] [trier of fact to exercise discretion under Civ. Code, § 3288]; see *Esgro Central, Inc. v. General Ins. Co.* (1971) 20 Cal.App.3d 1054, 1062 [98 Cal.Rptr. 153] ["Subdivision (a) of section 3287 does not authorize prejudgment interest as a matter of law where the amount of damage, as opposed to only the determination of liability, depends upon a judicial determination based upon conflicting evidence and is not ascertainable from truthful data supplied by the claimant to his debtor"].)

---

*See footnote, *ante*, page 301.

[10] Civil Code section 3287, subdivision (a) states: "Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day . . . ." Civil Code section 3288 provides: "In an action for the breach of an obligation not arising from contract . . . interest may be given, in the discretion of the jury."

### G.  *Attorney Fees*

■    Because we hold that there is no privity of contract between Superior and Mitzel and that Superior cannot maintain a contract claim for its cost overrun damages against Mitzel, we reverse the award of $300,000 in attorney fees. We remand the case to the trial court to fix the attorney fees based only on the $7,015 contract award arising out of Mitzel's contract with Pinnacle. Such fees should include those incurred defending the $7,015 breach of contract award on appeal.

## DISPOSITION

The award of compensatory damages is affirmed in its entirety. Except as to the attorney fees award, the cost award is affirmed. The award of prejudgment interest on the $7,015 contract breach award recovered by Superior pursuant to the assignment from Pinnacle is affirmed. The award of prejudgment interest on the $406,163 negligence award is reversed. The award of attorney fees for the $406,163 negligence award is reversed. Upon issuance of the remittitur, the trial court is to determine whether to award prejudgment interest on Superior's $406,163 negligence award in accordance with applicable law, and if so, to compute that amount to the date of entry of judgment; recompute the amount of attorney fees premised upon the $7,015 contract breach award recovered by Superior pursuant to the assignment from Pinnacle; and compute the amount of prejudgment interest to be recovered on the $7,015 contract breach award; Superior is to recover attorney fees incurred on appeal in the defense of the $7,015 contract breach award recovered by it pursuant to the assignment to it from Pinnacle. Any attorney fees award for those incurred on appeal should be pursued pursuant to rule 870.2(c) of the California Rules of Court. Each party shall bear its own costs on appeal.

Turner, P. J., and Armstrong, J., concurred.

A petition for a rehearing was denied April 22, 2004, and appellant's petition for review by the Supreme Court was denied July 21, 2004.