[No. B190948. Second Dist., Div. Five. Nov. 1, 2007.]

GREEN WOOD INDUSTRIAL COMPANY, Plaintiff and Respondent, v. FORCEMAN INTERNATIONAL DEVELOPMENT GROUP, INC., Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of BACKGROUND, parts A.2. through A.5. and part B., DISCUSSION, parts A.1. through A.3., part A.8., and parts B.1. and B.2.

768

**Counsel**

Esner, Chang & Ellis, Stuart B. Esner and Andrew N. Chang for Defendant and Appellant.

Law Offices of Jeffrey C. Chiao and Jeffrey C. Chiao for Plaintiff and Respondent.

**Opinion**

**MOSK, J.—**

## INTRODUCTION

A jury returned special verdicts finding defendant and appellant Forceman International Development Group, Inc. (Forceman), liable for fraud and negligence for its role in a conspiracy to induce plaintiff and respondent Green Wood Industrial Company (Green Wood) to pay for shipments of scrap metal that never existed.[1] The jury awarded Green Wood compensatory damages of $1,508,416.20 and punitive damages of $5,000. In the unpublished portion of this opinion, we affirm the judgment as to the fraud and negligence claims in favor of Green Wood and reverse the award of punitive damages. In the published portion of the opinion, we hold, inter alia, Green Wood can recover from Forceman all damages arising out of the conspiracy to commit fraud, notwithstanding the timing of Forceman's overt acts in support of the conspiracy; the source of monies paid by Green Wood for the goods is not relevant to Green Wood's right to recover the payments as damages; as the transaction concerned the sale of goods, even though the goods were not delivered, damages are governed by the California Uniform

---

[1] Judgment was entered in favor of Green Wood against nine defendants, including Forceman. All other parties either did not appeal or have abandoned or voluntarily dismissed their appeals.

Commercial Code, and therefore Green Wood may recover its lost profits as damages for fraud; and Green Wood may not recover as damages amounts alleged to arise from a claim by a third party against Green Wood, or obligation of Green Wood to a third party, even though the claim or obligation is the proximate result of Forceman's tortious conduct. Thus, we reduce the compensatory damage award by the amount attributable to that claim of or obligation to a third party.

## BACKGROUND

### A. *Factual Background*[2]

#### 1. *Summary of Relevant Facts*

Green Wood, a sole proprietorship based in Hong Kong, is primarily in the business of buying scrap metal from sellers in the United States for resale to buyers in China. Richshine Metals, Inc., a California corporation (Richshine), was in the business in California of selling scrap metal for export. Green Wood placed a purchase order with Richshine to acquire scrap plate metal and scrap iron (collectively, the goods) from Richshine and agreed to resell the goods to a buyer in China. Green Wood paid Richshine $1,074,548.20 for the goods. Green Wood's Chinese buyer funded $862,500 of that amount.

Defendant Forceman obtained and delivered certain certificates, required by the Chinese government, that the goods had been inspected (China Certification and Inspection Corporation or "CCIC" certificates). The goods, however, never existed. The certificates obtained by Forceman and provided to Green Wood, as well as packing lists, invoices, and bills of lading provided to Green Wood by Richshine to evidence shipment of the goods, were false. Green Wood sued Richshine, Forceman, and others for, inter alia, fraud, conspiracy to commit fraud, and negligence. The trial court instructed the jury that defendants could be liable for a conspiracy to commit fraud. The trial court also instructed the jury that compensatory damages claimed by Green Wood included amounts expended for the goods, additional harm arising from false representations, and lost profits. The jury returned special verdicts against Forceman, among others, finding it liable for fraud and negligence. The jury awarded Green Wood compensatory damages against all defendants, jointly and severally, in the sum of $1,508,416.20—the amount

---

[2] We state the facts in the light most favorable to the jury's verdict, resolving all conflicts and indulging all reasonable inferences to support the judgment. (*Bickel v. City of Piedmont* (1997) 16 Cal.4th 1040, 1053 [68 Cal.Rptr.2d 758, 946 P.2d 427], abrogated on another ground as stated in *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 100 [99 Cal.Rptr.2d 745, 6 P.3d 669].)

Green Wood had requested.[3] The figure requested consisted of Green Wood's payments to Richshine, Green Wood's lost profits on the resale transaction of $159,000, and a claim against Green Wood by, or an obligation of Green Wood to, its Chinese buyer for nondelivery of the goods in the amount of $274,868. We hold in the unpublished portion of this opinion that substantial evidence supports the judgment of liability for fraud and negligence against Forceman. Forceman challenges various components of the damages awarded against it.

2.–5.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

B. *Procedural Background**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISCUSSION

A. *Sufficiency of the Evidence*

1.–3.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

4. *Liability for All Damages Because of Conspiracy*

■ Forceman contends that the trial court erroneously permitted Green Wood to recover damages for payments made to Richshine before Forceman obtained the fraudulent CCIC certificates. We have concluded, however, that there was substantial evidence that Forceman conspired with the other defendants in Richshine's scheme to defraud Green Wood. " ' "[T]he major significance of the conspiracy lies in the fact that it renders each participant in the wrongful act responsible as a joint tortfeasor *for all damages ensuing from the wrong, irrespective of whether or not he was a direct actor and regardless of the degree of his activity.*" ' [Citation.]" (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 511 [28 Cal.Rptr.2d 475, 869 P.2d 454], italics added.) The timing of Green Wood's payments to Richshine and Forceman's conduct in procuring fraudulent CCIC certificates

---

[3] Green Wood obtained additional damages against Richshine and its principals relating to other transactions not relevant here.

*See footnote, *ante*, page 766.

are thus irrelevant to Forceman's liability for all damage suffered by Green Wood as a result of the fraudulent scheme.

### 5. *Damages Not Affected by Source of Funds*

■ Green Wood is entitled, inter alia, to compensation for the amounts it paid to Richshine. (Cal. U. Com. Code, § 2711, subd. (1).) "The fact that the buyer is a middleman, who purchases for resale or with the intent of making a reshipment to his or her customer, does not alter the rule as to the measure of damages for breach." (4A Lawrence's Anderson on the Uniform Commercial Code (3d ed. rev. 2006) § 2-714:56, p. 559.)

Forceman argues that Green Wood was not entitled to recover for payments to Richshine that were funded or transmitted by Green Wood's Chinese buyer. The evidence was undisputed that the purchase order was a contract between Green Wood and Richshine, pursuant to which Green Wood was obligated to pay Richshine for the goods. Green Wood's buyer was not a party to that contract. Green Wood had entered a separate resale contract with its Chinese buyer. In essence, Green Wood's buyer prepaid amounts in connection with its contract to purchase the goods from Green Wood, and Green Wood used those funds to pay Richshine. The funds sent to Richshine were thus, in effect, payments by Green Wood. The fact that Green Wood funded its payments to Richshine by instructing its buyer to transmit the funds directly to Richshine (thus saving substantial currency conversion costs) is irrelevant to Green Wood's right to recover for payments it was fraudulently induced to make for goods that never existed. (See *Allied Canners & Packers, Inc. v. Victor Packing Co.* (1984) 162 Cal.App.3d 905, 910–911 [209 Cal.Rptr. 60] [purchaser of raisins for resale to Japan was a buyer, not a broker, even though its Japanese resale buyer sent letter of credit to allow purchaser to pay seller]; see also *Goldman v. Bernstein* (Fla.Dist.Ct.App. 2005) 906 So.2d 1240, 1241 [that some of the money was wired to defendant for plaintiff from a third person's account is irrelevant as to the issue of plaintiff's damages].) Forceman cites no authority to the contrary.

### 6. *Recovery of Lost Profits*

■ Forceman asserts that the award to Green Wood of $159,000 for lost profits was erroneous. Forceman did not object to the lost profits instruction[23] or offer an alternative instruction on compensatory damages in the trial court.

---

[23] In supplemental briefing, Forceman contends that it objected to the lost profits instruction. The record does not support that contention. In context, the objection stated by Forceman's counsel refers not to the lost profits instruction, but to the portion of the trial court's instruction—based on the trial court's grant of a directed verdict against Christine Fan

"However, when a trial court gives a jury instruction which is prejudicially *erroneous as given*, i.e., which is an incorrect statement of law, the party harmed by that instruction need not have objected to the instruction or proposed a correct instruction of his own in order to preserve the right to complain of the erroneous instruction on appeal." (*Suman v. BMW of North America, Inc.* (1994) 23 Cal.App.4th 1, 9 [28 Cal.Rptr.2d 133]; see also Code Civ. Proc., § 647; *Huffman v. Interstate Brands Corp.* (2004) 121 Cal.App.4th 679, 705–706 [17 Cal.Rptr.3d 397].) We therefore consider whether Green Wood was entitled to recover lost profits.

■ The fraud in this case related to the purchase order. The purchase order was a contract for the sale of goods subject to division 2 of the California Uniform Commercial Code. (See Cal. U. Com. Code, §§ 2102, 2105.)[24] Accordingly, the damages available to Green Wood from the fraud are governed by California Uniform Commercial Code, section 2721, which provides for recovery on a benefit-of-the-bargain basis. That section provides: "Remedies for material misrepresentation or fraud include all remedies available under this division for nonfraudulent breach. Neither rescission or a claim for rescission of the contract for sale nor rejection or return of the goods shall bar or be deemed inconsistent with a claim for damages or other remedy." California Uniform Commercial Code section 2721 represents an exception to the general rule in California, embodied in Civil Code section 3343, that a plaintiff defrauded in the purchase or sale of property may recover only out-of-pocket loss. (See *Stout v. Turney* (1978) 22 Cal.3d 718, 726–727 [150 Cal.Rptr. 637, 586 P.2d 1228]; *Continental Airlines, Inc. v. McDonnell Douglas Corp.* (1989) 216 Cal.App.3d 388, 429–433 [264 Cal.Rptr. 779]; see also 6 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 1710, pp. 1238–1239.)

■ When, as here, a seller fails to deliver goods pursuant to a contract governed by the California Uniform Commercial Code, and the buyer does not cover, the buyer's remedy is set forth in California Uniform Commercial Code section 2713, subdivision (1). That section provides, in pertinent part, "the measure of damages for nondelivery or repudiation by the seller is the difference between the market price at the time when the buyer learned of the breach and the contract price *together with any incidental and consequential damages provided in this division (Section 2715)*, but less expenses saved in consequence of the seller's breach." (Italics added.) Green Wood did not seek damages based on the difference between contract price and market price, but rather sought its out-of-pocket damages and consequential damages based on

(president of Richshine) and Richshine—stating that "Plaintiff *has proved* its claim against Richshine Metal, Inc. and Christine Fan." (Italics added.)

[24] Neither party has raised any choice-of-law issue or disputed the application of California law.

its lost profits. Pursuant to California Uniform Code section 2715, subdivision (2)(a), a buyer of goods for resale may generally recover its lost profits as consequential damages, provided such damage "could not reasonably be prevented by cover or otherwise . . . ." (Cal. U. Com. Code, § 2715, subd. (2)(a); see Cal. Code com. 3, reprinted at 23A pt. 2 West's Ann. Cal. U. Com. Code (2002 ed.) foll. § 2715, p. 119; see *R.B. Matthews v. Transamerica Transp. Services* (9th Cir. 1991) 945 F.2d 269, 275 [under Cal. U. Com. Code, §§ 2713 & 2715, buyer may recover the difference between the market price and the contract price plus consequential damages including lost profits]; *Sun-Maid Raisin Growers v. Victor Packing Co.* (1983) 146 Cal.App.3d 787, 791 [194 Cal.Rptr. 612] [Cal. U. Com. Code, § 2715 permits recovery of "consequential damages such as lost profits"].) "[S]ection 2715, subdivision (2)(a) imposes upon the allegedly breaching party the burden of proving the inadequacy of efforts to mitigate consequential damages." (*Carnation Co. v. Olivet Egg Ranch* (1986) 189 Cal.App.3d 809, 818 [229 Cal.Rptr. 261].)

■ In this case, none of the defendants offered evidence that Green Wood had failed to mitigate its consequential damages or requested a jury instruction on the issue. Green Wood, however, introduced substantial evidence to sustain an award of lost profits. Green Wood presented evidence of its purchase price from Richshine, which included the cost of shipping the goods to China. Joseph Li of Green Wood testified that Green Wood sold the plate scrap to its buyer for $25 per ton more than Green Wood paid, and sold the scrap iron at $10 per ton more than Green Wood paid. Forceman had a full and fair opportunity to test Green Wood's damage calculation through cross-examination or rebuttal. On appeal, Forceman does not identify any specific manner in which Li's calculation was erroneous, and Forceman provides no argument or authority that the amount of lost profits awarded was excessive. Accordingly, substantial evidence supports the $159,000 award for Green Wood's lost profits.

Relying on *Kenly v. Ukegawa* (1993) 16 Cal.App.4th 49 [19 Cal.Rptr.2d 771] (*Kenly*), Forceman argues that California Uniform Commercial Code section 2721 does not "allow[] recovery of damages which would place the plaintiff in a better position than he or she would have been absent the fraud." In *Kenly*, the plaintiff was fraudulently induced to purchase a trust deed by the defendant's representation that the defendant would later sell to the plaintiff the farm that was the subject of the indebtedness. (16 Cal.App.4th at pp. 51–52.) The trial court awarded the plaintiff damages based not on the amount the plaintiff paid for the trust deed, but on the amount of profit the plaintiff anticipated from his intended acquisition and later, potential resale of the farm. (*Id.* at p. 52.) The Court of Appeal reversed the damage award, holding that a plaintiff could not recover lost profits for fraud related to a property the plaintiff never acquired. The court reasoned that, in general,

" 'successful tort plaintiffs are not entitled to have damages computed on a contract, or "benefit-of-the-bargain," theory.' " (*Id.* at p. 54.) Further, the provision in Civil Code section 3343, subdivision (a)(4) that permits a defrauded reseller (in cases *not* governed by the California Uniform Commercial Code) to recover lost profits is by its express language limited to purchasers who were fraudulently induced to " 'purchase or otherwise *acquire* the property in question.' " (*Kenly, supra*, 16 Cal.App.4th at p. 55, italics added.) Because the plaintiff had not acquired the *farm* but only the *trust deed*, the plaintiff had not acquired the property he intended to resell. (*Id.* at pp. 54–55, italics added.)

██ *Kenly, supra*, 16 Cal.App.4th 49 is inapposite for several reasons. First, in cases within the scope of California Uniform Commercial Code section 2721, damages may be calculated on a benefit-of-the-bargain basis. Second, unlike in *Kenly*, Green Wood was not fraudulently induced to purchase *different* property than the property it intended to resell for profit. Green Wood was fraudulently induced to purchase the goods, and it entered into a contract to resell the goods. Nor was the recovery in this case based upon Green Wood's mere *intention* to resell those very goods, as it was in *Kenly*. Rather, Green Wood had a resale contract in place. Finally, this is not a case in which an award of lost profits would put Green Wood in a better position than it would have been had the fraud not occurred. The evidence was undisputed that Green Wood was in the business of buying and selling scrap metal, had purchased from other suppliers in the past, and had a buyer in place for the goods. Accordingly, had Richshine and its coconspirators not defrauded Green Wood, Green Wood presumably could have obtained the goods from an alternative source and realized a profit by reselling the goods so obtained. Because the scrap metal market was rising rapidly, the fraud perpetrated by defendants deprived Green Wood of the ability to do so. Having received only the monies it paid and its lost profits, Green Wood is not in a better economic position than it would have been had the fraud not occurred. *Kenly* is therefore not determinative of whether lost profits were available to Green Wood under California Uniform Commercial Code section 2721.

### 7. *Damages for Buyer's Claim Against Green Wood*

██ Forceman asserts that the trial court erred in awarding Green Wood $274,868 for a claim made against Green Wood by its Chinese buyer, or an obligation of Green Wood to that buyer, for damages suffered by that buyer resulting from Green Wood's failure to deliver the goods.[25] We agree that as

---

[25] Forceman failed to include the trial exhibits relevant to the buyer's claim in appellant's appendix of trial exhibits. We have augmented the record with the exhibits. (Cal. Rules of Court, rule 8.124(b)(5).)

to this item, the damage award was improper. A plaintiff may not recover damages for an unpaid liability to a third party, unless the plaintiff proves to a reasonable certainty that the liability could and would be enforced by the third party against the plaintiff or that the plaintiff otherwise could and would satisfy the obligation.[26]

Under California law, a plaintiff—whether the plaintiff's claim sounds in contract or tort—generally cannot recover damages alleged to arise from a third party claim against the plaintiff when caused by the defendant's misconduct.[27] "It is clear that mere possibility, or even probability, that an event causing damage will result from a wrongful act does not render the act actionable . . . ." (*Walker v. Pacific Indemnity Co.* (1960) 183 Cal.App.2d 513, 517 [6 Cal.Rptr. 924], citations omitted; see also *Superior Gunite v. Ralph Mitzel Inc.* (2004) 117 Cal.App.4th 301, 312–313 [12 Cal.Rptr.3d 423] (*Superior Gunite*).) Accordingly, the existence of a mere liability is not necessarily the equivalent of actual damage. This is because the *fact* of damage is inherently uncertain in such circumstances. The facts that a third party has demanded payment by the plaintiff of a particular liability and the plaintiff has admitted such liability are not, by themselves, sufficient to support an award of damages for that liability, because that third party may never attempt to force the plaintiff to satisfy the alleged obligation, and the plaintiff may never pay the obligation. (*Superior Gunite, supra,* 117 Cal.App.4th at pp. 312–313; see also *Walker v. Pacific Indemnity Co., supra,* 183 Cal.App.2d at p. 517; *Crowley v. Peterson* (C.D.Cal. 2002) 206 F.Supp.2d 1038, 1042.)

In *Pac. Pine Lumber Co. v. W. U. Tel. Co.* (1899) 123 Cal. 428 [56 P. 103], the plaintiff alleged that the defendant telegraph company negligently failed to deliver a telegram to the plaintiff from a third party. As a result, the plaintiff breached a contract with, and caused damage to, the third party. The plaintiff alleged that it was damaged by the telegraph company's negligence because the third party had demanded contract damages against the plaintiff. The California Supreme Court held that the plaintiff had failed to allege cognizable damage. The possibility that the plaintiff might suffer future injury as a result of the third party's claim was insufficient to establish damages. (*Id.* at pp. 430–431.)

California law does, however, recognize that a plaintiff in a tort action may recover for a "loss reasonably certain to occur in the future. This is

---

[26] The recovery of such damages is also subject to other limitations on the recovery of damages, such as foreseeability, causation, and reasonableness.

[27] It is thus irrelevant for this purpose whether we apply a tort measure of recovery pursuant to Civil Code section 3343 or a contract measure of recovery pursuant to California Uniform Commercial Code sections 2713 and 2721.

known as *prospective damage.*" (6 Witkin, Summary of Cal. Law, *supra*, Torts, § 1552, p. 1026; see also Civ. Code, § 3283;[28] see *Bihun v. AT&T Information Systems, Inc.* (1993) 13 Cal.App.4th 976, 995 [16 Cal.Rptr.2d 787], disapproved on other grounds in *Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 664 [25 Cal.Rptr.2d 109, 863 P.2d 179].) A similar concept has been recognized by some authorities in the context of contract damages. For example, an authority states, "Indeed, in a resale situation, the buyer has been permitted to claim as consequential damages from the seller the amount of the buyer's potential liability to its customer; if the buyer establishes the probability that it will be sued by the customer, it is immaterial that the buyer has not yet been sued and made to bear the loss, and recovery is measured by the probable liability of the buyer to the customer." (24 Williston on Contracts (4th ed. 2002) § 66:68, pp. 737–738, fns. omitted; see also 4A Lawrence's Anderson on the Uniform Commercial Code, *supra*, §§ 2-715:307, 2-715:309,[29] 2-715:313, pp. 858–861.) Other authorities note that plaintiffs may recover for future losses if there is an appropriate showing that those losses "will in fact be incurred in the future." (2 Dobbs, The Law of Torts (2001) § 380, p. 1056; see 1 Dobbs, Law of Remedies (2d ed. 1993) § 8.5; Rest.2d Torts, § 910.)[30]

It may be that existing California authorities generally require payment of the liability in order to include the liability as damages.[31] But even if a

---

[28] Civil Code section 3283 provides: "Damages may be awarded, in a judicial proceeding, for detriment resulting after the commencement thereof, or *certain to result in the future.*" (Italics added.)

[29] "When a seller makes a warranty, knowing that the buyer will resell with the same warranty, the buyer may sue the seller for breach of that warranty and recover, as consequential damages, for the liability which the buyer will sustain to the subpurchasers, and, so long as the buyer proves the probability of being sued, it does not matter that no suit has yet brought. Recovery is measured by the probable liability of the buyer to the subpurchasers." (4A Lawrence's Anderson on the Uniform Commercial Code, *supra*, § 2-715:309, fns. omitted.)

[30] Although not discussing the issue, the court in a California case approved a damage instruction that included the following language: " 'Where a buyer has entered into a contract to resell the goods and the seller knows of the existence of such commitment on the part of the buyer to such third party, and that the seller's breach or failure to deliver such goods to the buyer will, as a direct and proximate result, disable the buyer from fulfilling the buyer's obligation to deliver such goods to the third party, and subject the buyer to liability to the third party in consequence of the buyer's inability to make good his commitment to the third party, then the buyer is entitled to recover the amount of his liability to the third party or such actual payment as the buyer may have reasonably made in good faith in satisfaction and discharge of his liability to the third party.' " (*House Grain Co. v. Finerman & Sons* (1953) 116 Cal.App.2d 485, 494, 495–496, fn. 4 [253 P.2d 1034].)

[31] (See 23 Cal.Jur.3d (2000) Damages, § 17, p. 36, citing *Pac. Pine Lumber Co. v. W. U. Tel. Co., supra*, 123 Cal. 428; see also *Agnew v. Parks* (1959) 172 Cal.App.2d 756, 768 [343 P.2d 118] ["It is the rule that fraud without damage is not actionable . . . . [¶] . . . Damage to be subject to a proper award must be such as follows the act complained of as a legal certainty . . . (citations)."].)

liability to a third party might be included as damages without actual payment, more certainty is necessary than just evidence of an obligation to pay a third party. The obligation by itself does not mean that one will pay the third party. Accordingly, as with other types of prospective damage, a plaintiff must demonstrate that it will suffer the damage with reasonable certainty—that is, the plaintiff must prove to a reasonable certainty that the plaintiff could and would pay the liability.

In this case, the evidence established that, at the time of trial, Green Wood had not paid any portion of its Chinese buyer's $274,868 claim. Although there is evidence that Green Wood had, in effect, settled the claim by agreeing to pay it, Green Wood presented no evidence that any such agreement would be enforceable in China, or that the liability could and would be enforced by the buyer in the United States or elsewhere, or that the claim will otherwise be paid. There was no other evidence from which the jury could conclude that it was reasonably certain that Green Wood would ever have to pay the money. (*Pac. Pine Lumber Co. v. W. U. Tel. Co., supra*, 123 Cal. at p. 432.)

Furthermore, it appears that the Chinese buyer's claim against Green Wood was for the buyer's own lost profits. The only evidence regarding the Chinese buyer's business, however, was that the buyer is a manufacturer of some kind, not a reseller. Green Wood presented no evidence to establish the fact or amount of the Chinese buyer's lost profits other than the Chinese buyer's mere claim. This illustrates another problem with allowing damages based on a third party claim. If a defendant is liable for any sum a plaintiff *agreed* to pay a third party, that sum could be subject to unfair manipulation.

Accordingly, the evidence is insufficient to sustain the award of $274,868 for the Chinese buyer's claim.

### 8.  *Insufficient Evidence of Punitive Damages*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### B.  *No Reversible Error in Excluding the Testimony of Christine Fan*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[*]See footnote, *ante*, page 766.

## DISPOSITION

The judgment in favor of Green Wood Industrial Company against Forceman International Development Group, Inc., is modified to award Green Wood Industrial Company $1,233,548.20 in compensatory damages and no punitive damages. As modified, the judgment is affirmed. Each party shall bear its own costs.

Armstrong, Acting P. J., and Kriegler, J., concurred.

A petition for a rehearing was denied December 3, 2007.